TONY ZUMBO & SON CONSTRUCTION CO., APPELLEE, *v.* OHIO DEPARTMENT OF TRANSPORTATION, APPELLANT.

(No. 83AP-823—Decided December 24, 1984.)

*Steven L. Ball,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Karl W. Schedler,* for appellant.

WHITESIDE, J. Defendant, State of Ohio, Department of Transportation, appeals from a judgment of the Court of Claims and raises seven assignments of error as follows:

"1. The court of claims erred, to the prejudice of the appellant, in finding that an unanticipated, subsurface defect in the condition of the underpavement of Wilson-Mills Road constituted a breach of contract by the appellant.

"2. The court of claims erred, to the prejudice of the appellant, in failing to allow the appellant to apply R.C. 5525.14 to project 411-79.

"3. The court of claims erred, to the prejudice of the appellant, by concluding that the payment to appellee for the extra work necessitated by the unforeseen defect in Wilson-Mills Road was not equitable.

"4. The court of claims erred, to the prejudice of the appellant, by allowing appellee to recover compensation for the placement of asphalt beyond the amount specified by the contract.

"5. The court of claims erred, to the prejudice of the appellant, by permitting the appellee to avoid the contract and recover on a 'total reasonable cost of performance' theory.

"6. The court of claims erred, to the prejudice of the appellant, in ordering appellant to pay prejudgment interest when the appellee's claim was unliquidated prior to judgment.

"7. The court of claims erred, to the prejudice of the appellant, by awarding the appellee interest on its judgment in an amount greater than that permitted by law."

Plaintiff-appellee, Tony Zumbo & Son Construction Co. (Zumbo), was the lowest bidder and was awarded a contract by defendant-appellant, State of Ohio, Department of Transportation (State), to construct a one and one-half mile portion of Wilson-Mills Road in Mayfield, Cuyahoga County. Because of a dispute between the parties as to the compensation due Zumbo for performance of the work involved, this action was brought in the Court of Claims, which made the following findings in its corrected judgment entry following the trial of the case:

"The Court finds the parties, the Ohio Department of Transportation on behalf of Cuyahoga County, Ohio, and Tony Zumbo & Son Construction Co., entered into a contract, for grading, draining, widening and resurfacing 7,191.97 feet of Wilson Mills Road at a total unit price sum of $1,171,871.33. The date of the contract was July 10, 1979. The completion date was May 31, 1980.

"In the process of stripping the asphaltic surface off the original concrete pavement, to which the resurfacing was to be applied, the condition of the concrete was found to be in such a condition that it was necessary to remove it and build the roadway anew. This required a plan change, which changed the performance of the contractor radically. A major change order was prepared but authority to proceed with it was not granted until June 9, 1980. The completion date of the contract was extended to October 28, 1980. By May 31, 1980 the contractor had received a total payment of $690,438. (almost 60% of the contract price).

"The remainder under the original contract to be performed after June 1, 1980 was $481,433. ($1,171,871. − $690,438.). Non-performed items under the original contract were $361,916. which, left $119,517. of items under the original contract. The additional items added by change orders were $807,955. which made contract work to be performed according to defendant of $927,512. ($119,517 + $807,995.). To an unidentified extent the defendant re-

quired some of the $927,512 to be performed under the 20% increased quantities at the original unit prices by application of R.C. 5524.14 [sic]. The balance of the original contract and the added estimated amount(s) were to be performed by 'force account' under Section 109.04 of the Construction and Material Specifications.

"The Court further finds that the total of payments, received by plaintiff for work performed in accordance with defendant's demands, are $1,599,329. Plaintiff claims an additional $112,455 for a total performance value of $1,711,784. Or conversely defendant's balance of performance, supra, totals $927,512. plus plaintiff's additional claim of $112,455 totals $1,039,967. less $908,890 payments received for work on and after June 1, 1980 leaves a balance due of $131,077. This is $18,622. more than plaintiff's demand of $112,455.

"The Court further finds that the defendant in its superior bargaining position forced the plaintiff to proceed with the work or suffer the consequences of a default contract performance. That the plaintiff notified the defendant that it was proceeding under protest and it continued to do so at each appropriate opportunity (change orders and directions of the Project Engineer (Cuyahoga County) and the defendant department) and in order to receive payment at all was forced to approve payment amounts set out in the change orders.

"Further the Court finds the defendant for the use of Cuyahoga County has had the use of plaintiff's material and labor to the extent of the claim of plaintiff as reduced to judgment.

"The Court concludes as a matter of law the original contract was breached by the defendant when the conditions found, on which the original contract was based, were entirely impractical to be performed. The payment which the defendant required plaintiff to accept was not fair and equitable, which the defendant was required to and should have made in accordance with Sections 104.02, 104.03 and 109.04 of the Construction and material specifications. The work required to be performed on and after June 1, 1980 should have been entirely on a 'force account' basis.

"The Court further finds that the damage suffered by plaintiff is in the sum of $112,455., as prayed for in the complaint.

"The Court further concludes that plaintiff is by reason of defendant's breach of contract entitled to judgment at the legal rate of ten (10%) percent from January 1, 1981 to date of judgment and then in accordance with Section 2743.18 of the Revised Code."

The first four assignments of error are somewhat interrelated and will be generally discussed together. There is no dispute but that it was impracticable, if not impossible, to perform the contract as originally contemplated and agreed to because the existing concrete underpavement was too deteriorated to patch and repair. Therefore, the project had to be changed so that all of the concrete underpavement would be removed and a new roadway, both concrete underpavement and asphaltic surface, would be constructed. Such type of construction was contemplated for a small portion of the project known as "the hill," but not with respect to the balance of the project. Section 104.02 of the Construction and Material Specifications, made a part of the contract, provides in the first paragraph:

"* * * The department reserves the right to make, at any time during the progress of the work, such increases or decreases in quantities and such alterations in the details of construction, including alterations in the grade or alinement [sic] of the road or structure or both, as may be found to be necessary or desirable. Such increases or decreases and alterations shall not invalidate the

contract nor release the surety, and the Contractor agrees to perform the work as altered, the same as if it had been a part of the original contract."

That such provision does not contemplate performance of an entirely different contract from that originally entered into is indicated both by Section 104.01 of the Construction and Material Specifications, providing that the work shall be performed "in accordance with the plans, specifications and terms of the contract," and by the second paragraph of Section 104.02 which provides that:

"Unless such alterations and increases or decreases materially change the character of the work to be performed or the cost thereof, the altered work shall be paid for at the same unit prices as other parts of the work. * * * If, however, the character of the work or the unit costs thereof are materially changed, an allowance shall be made on such basis as may have been agreed to in advance of the performance of the work, or in case no such basis has been previously agreed upon, then an allowance shall be made, either for or against the Contractor, in such amount as the Director may determine to be fair and equitable."

There was competent, credible evidence, and the trial court found that the alterations in the project necessitated by discovery of the deteriorated condition of the concrete underpavement, substantially changed both the character of the work and the unit cost thereof requiring the director to determine a fair and equitable compensation for such work since there was no advance provision agreed to in the contract. Also applicable and relied upon by the state is the third paragraph of Section 104.02 which provides that:

"Should the Contractor encounter or the department discover during the progress of the work subsurface or latent physical conditions at the site differing materially from those indicated in this contract, or unknown physical conditions at the site of an unusual nature, differing materially from those ordinarily encountered and generally recognized as inherent in work of the character provided for in the contract, the Director shall be promptly notified in writing of such conditions before they are disturbed. The Director will thereupon promptly investigate the conditions and if he finds they do so materially differ and cause an increase or decrease in the cost of, or the time required for performance of the contract, an equitable adjustment will be made."

Under this provision, like the provision for material change, compensation for the work will be upon an equitable basis. However, the contract does not leave to speculation the methodology to be utilized in determining equitable compensation or an equitable adjustment but, instead, the fourth paragraph of Section 104.02 provides that, "[a]ny adjustment in compensation because of a change or changes resulting from one or more of the conditions described in the foregoing paragraph will be made in accordance with the provisions of 104.03 * * *," which provides that:

"The Contractor shall perform unforeseen work, for which there is no price included in the contract, whenever it is deemed necessary or desirable in order to complete fully the work as contemplated. Such work shall be performed in accordance with the specifications and as directed, and will be paid for as provided under 109.04.

"The provisions of this section are subject to the limitations of 5525.14, O R C."

R.C. 5525.14 contains limitations upon the authority of the Director of Transportation to modify contract terms. First, the director is authorized to increase the quantities of any items specified in a contract by twenty percent so long as the total amount of additional

cost does not exceed $5,000 for that item. Secondly, the director is authorized to contract for extra work without advertising for and receiving bids if the total cost of the extra work does not exceed $5,000.[1] Where either an increase in the quantities of any item or the cost of extra work not covered by a unit-price bid involves an expenditure in excess of $5,000, the director is authorized to enter into a contract for such extra work only upon compliance with the law relating to advertising for bids and the award of contracts. R.C. 5525.14 further provides that:

"The extra work referred to in the next two preceding paragraphs of this section includes equitable adjustments or payments necessitated by changed conditions not contemplated in the original contract, changes or alterations in the original plans or specifications, or suspension of work."

Accordingly, on its face, R.C. 5525.14 appears to apply to the present circumstances. However, R.C. 5525.14 makes an exception to the requirement of advertising for bids if "an emergency exists" which "would unduly delay the completion of the project" because of "the time required for the advertising for such bids." The director made a finding of the existence of such an emergency in issuing change orders.

Section 109.04 of the Construction and Material Specifications sets forth the methodology for payment of work on a force-account basis, which essentially is a cost-plus basis with provisions for ascertaining costs and with variations in the percentages to be added to cost, dependent upon the nature of the expenditure.

As the trial court noted in its judgment entry, the state conceded that Zumbo was entitled to compensation greatly in excess of the original contract

bid price due to the necessary changes required because of the unforeseen circumstances encountered. However, in computing compensation, the state utilized the provisions of R.C. 5525.14 with respect to performance of work where a single bid item could be allocated and limited the "overrun" to twenty percent but utilized the force-account provisions of Section 109.04 with respect to all other work. The trial court found this not to be equitable, and that an equitable adjustment required that all work performed pursuant to the changed specifications should have been paid for upon a force-account basis.

Turning more specifically to the assignments of error, by the first, the state contends that the trial court erred in finding that the state breached the contract. In support of this contention, the state assumes that the trial court found that the existence of the unanticipated condition of the concrete underpavement, in and of itself, constituted a breach of the contract. This contention, however, takes the trial court's comment out of context. As set forth above, the trial court's decision is not that the state breached the contract by the conditions found but, instead, that the state breached the contract when the conditions on which the original contract were based were found to be impractical to be performed. In the next sentence, the trial court defined the nature of the breach stating that, "the payment which defendant required plaintiff to accept was not fair and equitable." Accordingly, the breach was in failing to make a fair and equitable adjustment in accordance with Sections 104.02, 104.03 and 109.04 of the Construction and Material Specifications. In essence, the trial court found that the state breached the contract by insisting that Zumbo complete the work using the changed specifications upon the terms and conditions demanded by the state under threat of the consequences of

---

[1] Since amended to $25,000 effective March 30, 1983.

default contract performance. One essential difference was the utilization of the original bid-unit prices for some items of work and the limitation of "overruns" to twenty percent. Since the trial court did not make the finding upon which the first assignment of error is predicated, it is not well-taken.

By the second assignment of error, the state contends that the trial court erred in not permitting the state to apply the provisions of R.C. 5525.14 to reduce the compensation due Zumbo. We find no error under the circumstances of this case. As noted above, the state selectively applied the provisions of R.C. 5525.14, applying only that portion thereof relating to increases in quantities of unit-price items with the resultant twenty percent limitation, but did not attempt to apply the limitations of R.C. 5525.14 with respect to force-account payments. However, the fifth paragraph of R.C. 5525.14 provides expressly that, with respect to "equitable adjustments or payments necessitated by changed conditions not contemplated in the original contract," the third and fourth paragraphs of R.C. 5525.14 shall be applicable. Necessarily, the first two paragraphs of R.C. 5525.14 relied upon and utilized by the state are not applicable. In other words, R.C. 5525.14 explicitly recognizes that unit-price bids in a contract do not apply to equitable adjustments or payments necessitated by uncontemplated changed conditions.

The trial court directly found that Section 104.02 requires that, whereas in this case, unanticipated conditions require an entirely different contract to be performed than that originally contemplated, the unit-prices bid in the original contract do not apply but, instead, payment is to be made on an equitable basis which necessarily means a force-account basis as provided in Section 109.04 of the Construction and Material Specifications. Such determination is fully consistent with R.C. 5525.14. The second assignment of error is not well-taken.

By the third assignment of error, the state contends that the trial court erred in concluding that payment for work necessitated by the unforeseen conditions was not equitable. To some extent, this contention is predicated upon the same reasons advanced in connection with the second assignment of error with an additional contention that the evidence did not support the trial court's finding. However, the trial court's finding is supported by competent, credible evidence, even though there may be evidence upon which a contrary conclusion could have been predicated, and accordingly, the trial court's finding that the payment made by the state was not equitable within the contemplation of the contract will not be interfered with by a reviewing court. See *C. E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261]. Furthermore, as noted above, the trial court correctly found that, pursuant to the contract itself, payment should have been made upon a force-account basis for all work performed after June 1980. The third assignment of error is not well-taken.

The fourth assignment of error raises a related issue with respect to the specific item of placement of asphalt. Essentially, the state contends that Zumbo used more asphalt than would be necessary under the specifications to construct the asphaltic surface of the roadway and that payment should be limited to the amount of asphaltic material that should have been utilized rather than the amount actually utilized by Zumbo. With respect to the asphaltic material, Section 109.04(b) provides that "[f]or materials accepted by the Engineer and used, the Contractor shall receive the actual cost of such materials delivered on the work * * * to which cost 15 percent may be added." Section

109.04 separately provides for the payment of labor and for equipment use.

Unfortunately, the evidence is somewhat vague with respect to the method of measurement utilized by the state, with some indication that the state's measurement may have been made in advance upon a hypothetical calculation as to the amount of asphaltic material estimated to be needed to perform the work. In any event, the person who made the calculations did not testify. Neither is there any evidence that any portion of the asphalt pavement was rejected as not being in accordance with the contract. Essentially, the state contends that portions of the asphalt roadway surface are wider and thicker than are required by the amended specifications. Thus, there is no contention that the total amount of asphalt was not delivered to the site and used in the project. There was evidence as to the reasons why additional asphaltic material over and above that computed by the state might be necessary in actual performance of the work in accordance with the specifications. In short, the trial court's finding was supported by competent, credible evidence and cannot be interfered with by a reviewing court. *C. E. Morris Co.*, *supra*. The fourth assignment of error is not well-taken.

By the fifth assignment of error, the state contends that the trial court erred in allowing recovery on a so-called "Total Reasonable Cost of Performance" theory. In *High Voltage Systems Div.* v. *Ohio Dept. of Transportation* (Dec. 19, 1978), No. 78AP-88, unreported, this court recognized that a total-cost-of-performance methodology of computing damages for breach of contract might be appropriate under certain circumstances. Here, we find no error. As noted above, the contract provides that, under the circumstances involved, payment will be made upon a force-account basis and further defines the methodology to be utilized in determining compensation upon a force-account basis which essentially is a total-cost-of-performance basis.

In *High Voltage,* on the other hand, payment was made in accordance with change orders issued by the state and voluntarily accepted by the contractor. For that reason, we found a total-reasonable-cost-of-performance-recovery theory to be inappropriate in that case. Here, although the state made change orders, Zumbo did not voluntarily accept such change orders but, instead, was forced to sign and proceed with such change orders under the threat of default. In effect, the trial court found that there was no voluntary agreement to the change orders by Zumbo. Such finding is supported by the evidence since Zumbo specifically disavowed any such acquiescence by letters protesting the state's action, indicating that the performance of the work should proceed solely on a force-account basis and indicating an intent to file an administrative claim. Thus, the findings of the trial court in this respect are also supported by competent, credible evidence. The fifth assignment of error is not well-taken.

In the sixth assignment of error, the state contends that the trial court erred in allowing Zumbo prejudgment interest contending that the claim was unliquidated prior to judgment. R.C. 2743.18(A) provides that the state shall be liable for prejudgment interest upon the same basis as allowed between private parties to a suit, making applicable R.C. 1343.03(A). Where the amount owing under a contract is clear, interest runs on the debt from the time it was due and payable, even though liability for the debt is disputed. *Braverman* v. *Spriggs* (1980), 68 Ohio App. 2d 58 [22 O.O.3d 47]. On the other hand, where the amount of the claim is unclear and uncertain, it is unliquidated and in-

terest does not commence until the claim becomes liquidated as to amount.

Defendant contends that the amount due plaintiff remained unliquidated until the final judgment of the trial court, pointing out that plaintiff in its prayer sought $175,000, and during discovery presented claims exceeding $140,000. However, such additional claims were predicated upon an alternative theory of recovery rejected by the trial court by accepting plaintiff's primary theory. The evidence appears to support the finding of the trial court that the amount due plaintiff was at all times capable of mathematical calculation by application of the contract provisions construed in accordance with R.C. 5525.14. The trial court's finding was that, pursuant to the contract's provisions, plaintiff should have been compensated on a force-account basis utilizing the formula set forth in Section 109.04 of the Construction and Material Specifications. When so computed, the amount due plaintiff was the amount of the judgment entered by the trial court. As noted previously R.C. 5525.14 requires that equitable adjustments or payments, necessitated by changed conditions, not contemplated in the original contract, constitute extra work to be compensated upon a force-account basis in accordance with the third and fourth paragraphs of R.C. 5525.14, the first two paragraphs not being applicable under such circumstances. Where the amount of compensation exceeds $5,000 (now $25,000), the contract must be awarded pursuant to an advertisement for bids unless the director finds that an emergency exists because the time required for advertising would unduly delay the completion of the project. The director made such findings, in this case, in the change orders which the state forced Zumbo to accept. Accordingly, applying the provisions of R.C. 5525.14, together with the provisions of Sections 104.02, 104.03 and 109.04 of the Con-

struction and Material Specifications, compensation to the contractor was to be made upon a force-account basis using the methodology of computations set forth in Section 109.04. Had the state followed this procedure, plaintiff would have been paid the amount that the trial court found was due under the contract.

The only other issue was with respect to the amount of asphaltic material for which plaintiff was entitled to payment. However, the amount was not in dispute but, instead, only a legal question as to whether plaintiff was legally entitled to payment for all of the asphalt used in completing the project.

Accordingly, the trial court's finding that plaintiff is entitled to interest is supported by competent, credible evidence and the court did not err or abuse its discretion in awarding interest. No issue has been raised with respect to the appropriateness of the date which the trial court found the running of interest to commence. Accordingly the sixth assignment of error is not well-taken.

The seventh assignment of error raises a different issue with respect to interest, namely, the rate of interest. As defendant points out, R.C. 1343.03(A) provided for eight percent interest from January 1, 1981 until July 5, 1982, when R.C. 1343.03 was amended to provide for ten percent interest. Defendant contends that the trial court erred in awarding prejudgment interest at the rate of ten percent for the period prior to July 5, 1982. We agree. Accordingly, the seventh assignment of error is well-taken.

For the foregoing reasons, the first six assignments of error are overruled, but the seventh assignment of error is sustained; the judgment of the Court of Claims is affirmed in all respects except with the rate of interest awarded from January 1, 1981 to July 5, 1982; and this cause is remanded to that court with in-

structions to modify its judgment to provide that the rate of interest upon a judgment shall be eight percent from January 1, 1981 to July 5, 1982, and ten percent thereafter.

*Judgment affirmed in part and cause remanded with instructions to modify the judgment.*

STRAUSBAUGH and NORRIS, JJ., concur.