RE/MAX INTERNATIONAL,
INC., Plaintiff,

v.

Robert ZAMES, et al., Defendants.

No. 1:97–CV–1589.

United States District Court,
N.D. Ohio,
Eastern Division.

Feb. 20, 1998.

Stephen ·J. Squeri, Mark J. Andreini, Jones, Day, Reavis & Pogue, North Point, Cleveland, OH, for Plaintiff.

Edward W. Cochran, Cochran & Cochran, Shaker Heights, for Defendants.

## ORDER AND OPINION

GWIN, District Judge.

On June 10, 1997, Petitioner RE/MAX International, Inc. filed a motion and application to vacate the March 11, 1997, award of arbitrators selected under the parties agreement [Doc. 1]. On January 16, 1998, Respondents Robert Zames and Zames Realty, Inc. filed an application to confirm the March 11, 1997, arbitration award [Doc. 14]. For the reasons that follow, the Court denies Petitioner RE/MAX's application to vacate the award and the Court grants Respondent Zames' motion to confirm the arbitration award.

### I

Petitioner RE/MAX International, Inc. seeks an order partially vacating an arbitration award on two grounds.[1] First, Petitioner RE/MAX says the arbitrators exceeded their powers in rendering an award in a breach-of-contract claim. RE/MAX claims that an express one-year contractual limitation period in the parties' written contract barred the award. Second, Petitioner RE/MAX says this Court should vacate the award because the award was procured by fraud.

---

1. Petitioner RE/MAX seeks to vacate the arbitration award pursuant to the Ohio Rev.Code § 2711.10. That section says, in pertinent part:
    In any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if:
    (A) The award was procured by corruption, fraud, or undue means.
    (D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. If an award is vacated and the time within which the agreement required the award to be made has not expired, the court may direct a rehearing by the arbitrators.

Petitioner RE/MAX is a corporation engaged in the business of selling real estate brokerage franchises. Respondent Robert Zames is an individual who made claims against RE/MAX in an arbitration. Respondent Zames Realty Inc. was the other claimant in the arbitration against RE/MAX International.

On May 9, 1991, Robert Zames, as franchisee, entered a Franchise Agreement with an affiliate of RE/MAX. On May 3, 1994, Respondents Robert Zames and Zames Realty Incorporated (collectively, "Zames") sued in the Court of Common Pleas for Lake County, Ohio, against RE/MAX International and others. The complaint generally alleged breach of contract, bad faith, wrongful use of trademarks, tortious interference of contract, and fraud arising out of the execution and performance of the Franchise Agreement.

On June 20, 1994, RE/MAX International moved to dismiss Zames' Lake County Complaint for lack of jurisdiction on two grounds. First, RE/MAX International contended that the applicable Franchise Agreement contained an enforceable arbitration clause that required Zames to submit any claims to binding arbitration under a dispute resolution system detailed in the Franchise Agreement. Second, RE/MAX International contended that the exclusive venue for the judicial enforcement of the arbitration provision and any judicial proceeding arising under the Franchise Agreement is in Denver County, Colorado.

In response, Zames' counsel's contended that they properly sited the arbitration in Ohio. Petitioner RE/MAX then suggested a new arbitration agreement. After negotiations, Petitioner RE/MAX and Zames entered a supplemental arbitration agreement dated December 1, 1994. Petitioner RE/MAX's attorneys drafted the supplemental agreement. In this supplemental agreement, Respondent Zames agreed to allow discovery that was not otherwise available under the parties franchise contract. Zames also agreed to a covenant not to bring a civil action against RE/MAX or any individual defendant associated with RE/MAX.[2] This supplemental arbitration agreement required the parties to submit any currently existing claims to binding arbitration in Cuyahoga County, Ohio pursuant to Section 2711 of the Ohio Revised Code.

The arbitration hearing began on December 20, 1995. On the first day of this hearing, Petitioner RE/MAX argued that Zames had failed to timely bring his claim. When the hearing reconvened for a second day, RE/MAX raised an issue whether the arbitration panel had jurisdiction because of the timeliness issue. RE/MAX recessed the hearing, claiming it would seek judicial determination of this issue. RE/MAX then delayed seeking such determination until February 1, 1996, when it filed a declaratory judgment action in the U.S. District Court for the Northern District of Ohio, Case No. 1:96–CV–213.

There, "RE/MAX International contends that the arbitration tribunal has no jurisdiction or authority to hear evidence on or decide the merits of the case" because "Zames' claims against it are all time-barred under the express terms of the Franchise Agreement."

On April 16, 1996, Judge Matia denied RE/MAX's request. He granted Zames' motion to compel arbitration.[3] While RE/MAX had raised the issue of timeliness, Judge Matia decided that a covenant not to sue stopped the action. RE/MAX filed a motion to reconsider this order. On August 6, 1996, Judge Matia denied this motion to reconsider. On September 5, 1996, RE/MAX filed a notice of appeal to the Sixth Circuit from Judge Matia's judgment. On June 6, 1997, RE/MAX dismissed its appeal to the Sixth Circuit.

The parties held an arbitration hearing from January 6, 1997 through January 11, 1997.[4] At the hearing, Zames made claims for breach of contract, bad faith, and viola-

---

2. The parties executed a mutual covenant not to sue.

3. Initially, Judge Matia found RE/MAX acted frivolously in contesting the arbitration. He later withdrew this finding.

4. RE/MAX sought to stay the arbitration hearing pending determination of its appeal to the Sixth Circuit. The District Court denied this request.

tions of Ohio's Business Opportunity Plans Act, Ohio Rev.Code § 1335.01 et seq. At the arbitration, Petitioner RE/MAX made claim for unpaid franchise fees. Petitioner RE/MAX also claimed that the arbitration panel did not have jurisdiction because Zames failed to bring his claim within one year of accrual.[5]

On March 11, 1997, the three-member arbitration panel rendered its award and opinion. The arbitration panel rejected Zames' claims for bad faith and for violation of Ohio's Business Opportunity Plans Act but awarded Zames $100,000 on his breach of contract claim. The arbitration panel denied Petitioner RE/MAX's counterclaim for unpaid franchise fees.

## II

■ Petitioner RE/MAX says this Court should vacate the March 11, 1997, arbitration award because it says a one-year contractual limitation period in the Franchise Agreement barred the award. RE/MAX says that provision required Respondent Zames' claims be brought within one-year of accrual.[6] RE/MAX says it did not waive this requirement when it entered the supplemental agreement in December 1994. Petitioner RE/MAX claims the arbitrators exceeded their authority by giving Zames' an award despite Zames' purported concession that he did not file his contract claim within one year of the occurrence of the facts leading to his breach-of-contract claim.[7] Alternatively, Petitioner RE/MAX says this Court should vacate the

arbitration award because it was obtained through fraud.

■ *Res judicata* bars repetitious suits involving the same cause of action. The bar rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations. The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound not only as to every matter offered and received to sustain or defeat the claim or demand, but as to any other admissible matter that they might have offered for that purpose. *Sea–Land Services, Inc. v. Gaudet,* 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974); *Cromwell v. County of Sac,* 94 U.S. 351, 352, 24 L.Ed. 195 (1876). The judgment stops the cause of action. The parties cannot litigate any issue whatsoever, absent fraud or other factor invalidating the judgment.

■ The doctrine of *res judicata* bars a suit on a cause of action that has been judicially determined on the merits in a prior suit involving the same parties or persons in privity with them. Thus, the Court requires the concurrence of three elements: (1) identity or privity of the parties to the actions; (2) identity of the causes of action; and (3) a prior judgment on the merits. Application of these principles to the case at the bar compels the conclusion that Petitioner RE/MAX's effort to challenge the jurisdiction on the argument of timeliness may not be relit-

---

**5.** The arbitration panel unanimously ruled:

1. This panel does have jurisdiction to consider the breach of contract claim since RMI [RE/MAX International] waived the contractual one-year statute of limitations by entering into the Arbitration Agreement. The key facts which distinguish this case from those cited by RMI is that RMI voluntarily entered into an Arbitration Agreement separate and distinct from the arbitration requirements contained in the franchise agreement, and after the one year statute of limitations had already expired.

**6.** Section 14.L of the Franchise Agreement provides in relevant part:

L. Actions Barred. Except for claims by Franchisor for sums due under the terms of Section 9 hereof, claims relating to the trademarks, service marks, copyrights or trade secrets of RE/MAX International, Inc. or claims

relative to the post-termination obligations set forth in Section 8 hereof, any and all claims and actions arising out of or relating to this Agreement (including, but not limited to, the offer and sale of the franchise covered by this Agreement), the relationship of Franchisee and Franchisor, or Franchisee's operation of the franchise, brought by any party hereto against the other, *shall be commenced within one year from the occurrence of the facts giving rise to such claim or action, or such claim or action shall be barred.* (Emphasis added.)

**7.** Petitioner RE/MAX says Respondent Zames' contract claims arose from RE/MAX sale of a franchise to Dennis Falvey in December 1992. Falvey located his office within one mile of Zames' location. Petitioner RE/MAX says this Falvey's franchise opened in February 1993, more than one year before Zames first filed a complaint in May 1994.

igated. *Associated General Contractors of Massachusetts v. Boston Dist. Council of Carpenters,* 642 F.Supp. 1435 (D.Mass.1986).

*Res judicata* embodies two preclusion ideas: "issue preclusion" and "claim preclusion." Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has previously been litigated and decided. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that has never been litigated because of a determination that the matter should have advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar.[8] *Heyliger v. State University and Community College System of Tennessee,* 126 F.3d 849, 852 (6th Cir. 1997); *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984).

There is no dispute that identity of the parties is present here. Secondly, there is sufficient identity of the causes of action. The critical inquiry here is whether the facts underlying the claims are identical and whether Judge Matia's judgment stops this action though it did not explicitly deal with the timeliness issue.

Advancing a new theory of recovery or seeking a new remedy cannot overcome *res judicata's* bar if the claim grows out of the same transaction, occurrence or agreement upon which a party based the previous claim. Here, a comparison of the factual predicates of both federal suits shows the identity of the asserted causes of action. In both, RE/MAX claimed the arbitration panel did not have jurisdiction because Zames failed to make a timely claim.

■ In the first litigation in federal court, Judge Matia did not explicitly determine RE/MAX's claim that the arbitration panel did not have jurisdiction because the demand was not timely brought. Where a judgment is rendered generally for the defendant, in a court of competent jurisdiction, the judgment must be considered as covering the whole case. A judgment stops a later cause of action upon any ground whatever in absence of some factor invalidating the judgment. When a party brings two suits upon the same cause of action and between the same parties, the judgment in the first is conclusive to the second as to every question that was, or might have been litigated.

Here, Petitioner RE/MAX raised the issue of timeliness in Northern District of Ohio Case No. 1:96–CV–213. Despite this, Judge Matia ordered the arbitration to go on. Absent reversal, this judgment binds the parties to the suit and their privies not only as to every matter that they offered and received to sustain or defeat the claim or demand, but as to any other admissible matter that they might have offered for that purpose. *Res Judicata* stops Petitioner RE/MAX claims as to the jurisdiction of the arbitration panel based on timeliness.

### III

■ Even if *res judicata did not stop RE/MAX's claims,* ·which it does, RE/MAX's claims fail. As related, Petitioners say the arbitrators exceeded their powers by awarding Zames damages on his time-barred claim. Petitioners claim this requires this Court to vacate the arbitration award. Ohio Revised Code § 2711.10(D) provides:

> In any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if:

> · · ·

> (D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

Ohio follows rules common to federal courts. In *Council of Smaller Enterprises v. Gates, McDonald & Co.,* 80 Ohio St.3d 661, 687 N.E.2d 1352 (1998), the Ohio Supreme Court described rules common to both state

---

8. In *Hapgood v. City of Warren,* 127 F.3d 490 (6th Cir.1997), the Court described claim preclusion: Therefore, claim preclusion has four elements in Ohio: (1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action.

and federal review of arbitration decisions. The Court emphasized four considerations. First, arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute that he has not agreed so to submit. Second, the question of arbitrability is an issue for judicial determination. Third, in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims. Fourth, where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless the Court may say with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Courts should resolve doubts in favor of coverage.[9]

Petitioner RE/MAX principally argues that the arbitration panel did not have power to decide the timeliness of Respondent Zames' demand for arbitration. The parties' arbitration agreement provided, in part:

C. The parties agree to resolve any and all disputes that arise between them or which involve them in accordance with the following:

1. Except as provided below, in the event that any dispute regarding this Agreement or the rights and responsibilities of the parties under this Agreement should arise between the Franchisee and RE/MAX, the parties agree to submit the dispute to mediation and, if unsuccessful, to binding arbitration

Near December 1, 1994, the parties entered further agreement to arbitrate. As memorialized, the parties agreed:

1. Robert Zames and Zames Realty, Inc. (collectively "Zames") and RE/MAX International, Inc. ("RE/MAX") and Dennis Falvey and DFI, Inc. (collectively "Falvey") agree to submit to arbitration any and all claims currently existing between them, including without limitation, any and all claims that were or could have been sought, in the case of *Zames, et al. v. RE/MAX International, Inc. et al,* . . .

7. The written award of the arbitrators shall be final and binding upon the parties and may be vacated or modified only as provided in §§ 2711.10 and 2711.11 of the Ohio Revised Code.

(RE/MAX's Mot. to Vacate, Ex. D).

Petitioner RE/MAX's argument is stated:

9. In *Gates McDonald,* the Court summarized these rules:

In *AT & T Technologies, Inc. v. Communications Workers of Am.,* 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), the United States Supreme Court summarized four general principles, developed in prior decisions of that court, to be applied when considering the reach of an arbitration clause. The essence of these general principles, set out primarily in the "Steelworkers Trilogy" (*Steelworkers v. Am. Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), United *Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United *Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), is pertinent to our review, and provides a framework for our inquiry.

The first principle is that " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' . . . This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed to submit such grievances to arbitration." *AT & T Technologies,* 475 U.S. at 648–649 quoting *Warrior & Gulf,* supra, 363 U.S. at 582.

The second principle is that "the question of arbitrability—whether a[n] . . . agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id.,* 475 U.S. at 649.

The third rule is, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *Id.,* 475 U.S. at 649.

The fourth principle is that "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' " *Id.,* 475 U.S. at 650, quoting *Warrior & Gulf,* supra, 363 U.S. at 582–582.

Zames' breach of contract claim was therefore time-barred because he commenced his action against RE/MAX International in May 1994—more than one year later. The arbitrators refused to follow this unambiguous provision. The arbitrators stated that the "panel ha[d] jurisdiction to consider the breach of contract claim" despite the one-year bar to Zames' contract claim. This is simply not so. Where, as here, a claim is asserted outside a contractual limitations period, "the question of jurisdiction is an issue for the trial court to decide, not the arbitrators."

(RE/MAX's Memorandum in Support of Mot. to Vacate, at 8).

In *Council of Smaller Enterprises v. Gates, McDonald & Co.,* supra, the Ohio Supreme Court reviewed this issue.[10] In *Gates,* the Ohio Supreme Court reviewed whether courts or arbitrators selected by the parties should determine whether demand for relief was timely. The Court found that the arbitrator, not the court, should decide the timeliness of the demand for relief:

> In applying the standard set forth in *AT & T Technologies,* Inc. Communications Workers of America, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)] that the party resisting arbitration must meet in order to overcome the presumption in favor of arbitrability, we ask "whether, because of express exclusion or other forceful evidence, the dispute over the interpretation of [the ninety-day demand provision] is not subject to the arbitration clause." *Id.,* 475 U.S. at 652. Our inquiry is " 'strictly confined' . . . to whether the parties agreed to submit disputes over the meaning of [the ninety-day demand provision] to arbitration. Because the . . . agreement contains a standard arbitration clause, the answer must be affirmative *unless the contract contains explicit language stating that disputes respecting [the ninety-day demand provision] are not subject to arbitration, or unless the party opposing arbitration . . . adduces 'the*

*most forceful evidence' to this effect from the bargaining history."* Id., 475 U.S. at 654–655 (Brennan, J., concurring)

*Gates, McDonald,* 80 Ohio St.3d at 667–68, 687 N.E.2d 1352 (emphasis added).

■ In construing a contract providing for dispute resolution by arbitration, we are mindful of the policy of the law to favor and encourage arbitration. *Brennan v. Brennan,* 164 Ohio St. 29, 128 N.E.2d 89 (1955); *Campbell v. Automatic Die & Products Co., 123 N.E.2d 401,* 162 Ohio St. 321, 329 (1954). A court should not deny arbitrability unless it may say with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. They should resolve doubts in favor of coverage. This policy is consistent with the federal policy that "requires that we rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).

The Supreme Court expressed this policy with piercing clarity in the famous Steelworkers Trilogy. If parties are reluctant to arbitrate a dispute covered by an arbitration clause, the courts can order arbitration. "An order to arbitrate the particular grievance should not be denied unless the Court may say with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. They should resolve doubts in favor of coverage." *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) (footnote omitted); *Johnston Boiler Co. v. Local Lodge No. 893, Intern. Broth. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL–CIO,* 753 F.2d 40 (6th Cir. 1985); *International Broth. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers–Local 1603 v. Transue & Williams Corp.,* 879 F.2d 1388 (6th Cir.1989) ("[G]iven

**10.** Petitioner RE/MAX argues that Ohio law must control where the parties have selected state arbitration rules to govern their dispute, those rules control in an action to enforce or vacate an award in a diversity case filed in Federal Court. For support, they cite *Eidi v. Kidder, Peabody &*

*Co., Inc.,* 931 F.2d 893 (6th Cir.1991) (deciding diversity care under Ohio Rev.Code § 2711); *Exquisito Services, Inc. v. Bartenders, Motel, Hotel & Restaurant Workers Local,* 579 F.Supp. 873, 876 (S.D.Ohio 1984).

the existence of an arbitration clause, a presumption of arbitrability arises, with all doubts resolved in favor of coverage.").

The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to find out whether the party seeking arbitration is making a claim that on its face is governed by the contract. *Johnston Boiler*, supra at 43; *United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 567–68, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). After the arbitrator has resolved a dispute, "[t]he refusal of courts to review the merits of an arbitration award is the proper approach to arbitration . . . ." *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

The parties here agreed to a broad arbitration provision. Under that provision, the parties agreed "to resolve any and all disputes that arise between them" through arbitration. The parties also agreed "to submit to arbitration any and all claims currently existing between them, including without limitation, any and all claims that were or could have been sought, in the case of Zames, et al. v. RE/MAX International, Inc. et al, . . ."

Given the strong policy favoring arbitration and given the Ohio Supreme Court's decision in *Gates, McDonald,* the Court cannot say with positive assurance that the parties did not intend to submit timeliness for the arbitration panel's decision. The Court accordingly finds the arbitration panel had jurisdiction to decide the timeliness issue. The Court denies RE/MAX's motion to vacate the arbitration award on grounds of timeliness.

## IV

■ Alternatively, Petitioner RE/MAX seeks to vacate the March 11, 1997, award on the ground of fraud. RE/MAX says that Respondent Zames presented a copy of the parties franchise agreement containing handwritten interlineations that purported to nullify the binding arbitration and venue provisions in the agreement. RE/MAX claims that Zames represented the copy as authentic. RE/MAX claims reliance and seeks damages.

■ The elements of an action in actual fraud are: a representation or, when there is a duty to disclose, concealment of a fact, which is material to the transaction at hand, made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether its true or false that knowledge may be inferred, with the intent of misleading another into relying upon it, justifiable reliance upon the representation or concealment, and resulting damages proximately caused by the reliance. *Gaines v. Preterm–Cleveland, Inc.*, 33 Ohio St.3d 54, 55, 514 N.E.2d 709 (1987); *First Natl. Supermarkets, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 104 Ohio App.3d 289, 661 N.E.2d 1121 (1994).

■ The question of justifiable reliance requires an inquiry into the relationship between the parties. *Lepera v. Fuson*, 83 Ohio App.3d 17, 26, 613 N.E.2d 1060 (1992). Reliance is justified if the representation does not appear unreasonable on its face and if, under the circumstances, there is no apparent reason to doubt the veracity of the representation. *Id.* See also *Togo Int'l, Inc. v. Mound Steel Corp.*, 106 Ohio App.3d 282, 286–87, 665 N.E.2d 1160 (1995).

On its face, this claim fails. Most obviously, RE/MAX shows no damages. RE/MAX claims the arbitration should have been held in Colorado. Nevertheless, this shows nothing supporting a claim that the results in Colorado would have been any different from the results it obtained in Ohio. The apparent argument is that RE/MAX did so badly after a six-day hearing in Ohio that it could have done no worse in Colorado. The proof of damages is an element essential to claims of both fraud and negligent misrepresentation. See *Burr v. Board of County Com'rs of Stark County*, 23 Ohio St.3d 69, 73, 491 N.E.2d 1101 (1986); *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 684 N.E.2d 1261 (1996). RE/MAX's speculation that it might have done better in an arbitration held in Colorado is insufficient to support the claim of fraud.

■ RE/MAX must show reasonable reliance. In a *representation to this Court,* RE/MAX attorney Stephen J. Squeri said:

Zames' counsel represented that Zames said his version of the Franchise Agreement constituted the true deal between Northeast and Zames.... In reliance on this representation, RE/MAX International agreed to forgo arbitration under the RE/MAX system (as required by the Franchise Agreement) and entered into the Supplemental Arbitration Agreement.

Attorney Squeri makes this representation despite his knowledge that on August 4, 1994, and four months before RE/MAX agreed to arbitrate in Ohio, his attorney associate had written:

> As I have indicated to you, *we have substantial reason* to believe that *the document in your possession, ... is neither authentic nor binding.* You have also expressed some doubt as to the authenticity of the document in your possession, and you have informed me that you may not rely on your document in opposing our Motion.

For a claim based on an omission or a false representation to be successful under Ohio law, the party must have relied on the omission or misrepresentation and such reliance must have been justifiable. *Rubin v. Schottenstein, Zox & Dunn,* 110 F.3d 1247 (6th Cir.1997).

RE/MAX did not rely upon any representation by Respondent Zames. To the contrary, the evidence is clear that RE/MAX did not so rely. RE/MAX entered the December 1, 1994, agreement to arbitrate because it benefitted RE/MAX. In consideration of the agreement, RE/MAX received the right to discovery, protection from other claims, and protection for third parties.

RE/MAX makes no showing that would entitle it to vacate the arbitration agreement on the grounds of fraud. Thus, the Court denies Petitioner RE/MAX's application for partial vacation of the arbitration award.

## V

■ Respondent Zames applies to have this Court confirm the March 11, 1997, arbitration award. In addition, Zames seeks prejudgment interest, pursuant to Ohio Revised Code § 1343.03.

On March 11, 1997, the arbitration panel gave an award to Zames for $100,000.00. The arbitration panel held:

> "Indeed it was RMI which sold the Re/Max franchise to Dennis Falvey in January 1993. In selling the franchise to Falvey within the one-mile buffer zone or radius of the City of Mentor, RMI breached its contract with Zames."

Ohio Revised Code § 1343.03(A), provides:
(A) Except as provided in division (C)(2) of this section, in cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum, except that, if a written contract provides a different rate of interest in relation to the money that becomes due and payable, the creditor is entitled to interest at the rate provided in that contract.

■ A trial court (but not an arbitration panel itself) has discretionary power to order prejudgment interest on a confirmed arbitration award. In Ohio, "a judgment upon a confirmed arbitrator's award can be considered an order in a civil action not settled by agreement of the parties," and as such, "prejudgment interest could be applicable to such action." *Davidson v. Bucklew,* 90 Ohio App.3d 328, 334, 629 N.E.2d 456 (1992).

In *Royal Electric Const. Corp. v. Ohio State Univ.,* 73 Ohio St.3d 110, 652 N.E.2d 687 (1995), the Ohio Supreme Court effected a major change in the standard for the grant of prejudgment interest in contract claims.[11]

---

11. Ohio courts formerly distinguished between contract claims where the damages were liquidated from those where the damage amounts were disputed. *See Tony Zumbo & Son Const. Co. v. Ohio Dept. of Transportation,* 22 Ohio App.3d 141, 148–49, 490 N.E.2d 621 (10th Dist. 1984) ("Where the amount owing under a contract is clear, interest runs on the debt from the time it was due and payable, even though liability for the debt is disputed."); *Braverman v. Spriggs,* 68 Ohio App.2d 58, 426 N.E.2d 526 (1980).

In *Royal*, the Ohio Supreme Court focused review of applications for prejudgment interest on whether the party has been fully compensated:

> It is apparent that courts in Ohio have attached great significance to the liquidated-unliquidated dichotomy, or have refined this rule and allowed prejudgment interest in situations where the claim is unliquidated but 'capable of ascertainment.' ... It is also apparent that these judicial creations (liquidated-unliquidated and capable-of-ascertainment tests) have caused much confusion among members of our bench and bar in deciding under what circumstances prejudgment interest is warranted. Hence, we believe that the focus in these types of cases should not be based on whether the claim can be classified as 'liquidated,' 'unliquidated' or 'capable of ascertainment.' Rather, in determining whether to award prejudgment interest ..., a court need only ask one question: Has the aggrieved party been fully compensated? *Id.*, 652 N.E.2d 687 (citations omitted).

As stated in *Royal*, the purpose of an award of prejudgment interest is to compensate the successful plaintiff during the time between the accrual of the claim and judgment. An award of prejudgment interest encourages prompt settlement and discourages protracted litigation. The Ohio Supreme Court said that the focus should be on full compensation of the aggrieved party. *Id.* at 116, 652 N.E.2d 687.

Here, full compensation requires prejudgment interest. One can scarcely imagine circumstances more warranting in prejudgment interest than here. Respondent Zames *initiated an action in May 1994. The parties entered the supplemental arbitration agreement dated December 1, 1994. RE/MAX delayed the arbitration till December 1995 and then recessed it. RE/MAX then delayed filing its first federal action until February 1, 1996. On April 16, 1996, Judge Matia ordered RE/MAX to arbitration and it delayed with a motion for reconsideration and an appeal that it dismissed on June 6, 1997. RE/MAX should not benefit from its dilatory actions. Respondent Zames should not be punished by RE/MAX's dilatory conduct. Prejudgment interest should be given.

The Court denies Petitioner RE/MAX's application to vacate the March 11, 1997, arbitration award. The Court grants Respondent Zames application to confirm the March 11, 1997, award. Further, the Court orders that Petitioner RE/MAX shall pay Respondent Zames interest at 10% per annum on $100,000.00 from February 1, 1993.

IT IS SO ORDERED.