COUNCIL OF SMALLER ENTERPRISES, APPELLANT,
*v.* GATES, MCDONALD & COMPANY, APPELLEE.

[Cite as *Council of Smaller Enterprises v. Gates,
McDonald & Co.* (1998), 80 Ohio St.3d 661.]

(No. 96–1302—Submitted October 8, 1997—Decided January 14, 1998.)

*Squire, Sanders & Dempsey, L.L.P., Daniel J. O'Loughlin, John E. Lynch, Jr.,* and *Harold E. Farling,* for appellant.

*Bricker & Eckler, Anne Marie Sferra, Harry Wright IV* and *Michael D. Smith,* for appellee.

ALICE ROBIE RESNICK, J.    The issue for resolution is whether, in the circumstances presented here, a court or an arbitrator determines the construction and consequences of the ninety-day demand provision in the parties' Service Agree-

ment. For the reasons that follow, we find that a presumption in favor of the arbitrability of the parties' dispute over the interpretation of Section 7.7(a)(i) of the agreement applies in the circumstances of this case, and that COSE, the party resisting arbitration, has failed to overcome the presumption. We affirm the judgment of the court of appeals.

The parties do not disagree that the underlying issues regarding fees are matters clearly within the scope of the agreement to arbitrate. The parties' disagreement centers on the interpretation to be given to the section of the agreement setting forth the ninety-day provision. COSE asserts that the ninety-day arbitration demand provision is a "condition precedent" that qualifies the agreement to arbitrate, and that indicates the parties' intent to have a court, not an arbitrator, construe Section 7.7(a)(i) of the agreement. Adoption of COSE's position would lead to the conclusion that the trial court therefore properly undertook to construe Section 7.7(a)(i), and properly determined that Gates McDonald's claim for the fees was untimely, so that arbitration is unwarranted.

Gates McDonald, on the other hand, asserts that the parties intended to have an arbitrator construe the meaning of Section 7.7(a)(i), and that, even if that section would operate as a "condition precedent" to the arbitration of the fee disputes, it is up to the arbitrator to make that determination. Adoption of Gates McDonald's position would lead to the conclusion that the parties must submit the "dispute" or "controversy" over the ninety-day demand provision to arbitration, with the arbitrator ruling on the implications of the ninety-day demand provision as a threshold matter requisite to any consideration of the fee disputes on the merits.

Initially, our consideration of this case recognizes that the arbitration clause agreed to by the parties in Section 7.7(a) of the Service Agreement is extremely broad. That clause begins with the language that "[a]ll disputes and controversies of every kind" shall be submitted to arbitration. The unqualified breadth of this language supports Gates McDonald's preferred construction of the parties' intent regarding the overall arbitration provision. At the same time, the employment by the parties of this opening broad language lessens the strength of COSE's position regarding the parties' intent to have the subsequent ninety-day demand provision specifically qualify the earlier language of the clause.

Our consideration is further influenced by the decision of the United States Supreme Court in *John Wiley & Sons, Inc. v. Livingston* (1964), 376 U.S. 543, 556–557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898, 908–909, in which the court stated:

"Questions concerning the procedural prerequisites to arbitration do not arise in a vacuum; they develop in the context of an actual dispute about the rights of the parties to the contract or those covered by it.

" * * *

"Doubt whether grievance procedures or some part of them apply to a particular dispute, whether such procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate cannot ordinarily be answered without consideration of the merits of the dispute which is presented for arbitration.

" * * *

"Once it is determined * * * that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition would be left to the arbitrator."

Although our decision is affected by the above concerns, the telling question in this case concerns what the parties agreed to empower an arbitrator to decide, as revealed by an examination of the parties' agreement. The answer to this question will resolve whether the disagreement over the ninety-day demand provision is a "procedural question" growing out of the dispute and bearing on its final disposition, so that it should be referred to the arbitrator in the sense discussed in *John Wiley & Sons.*

In *AT & T Technologies, Inc. v. Communications Workers of Am.* (1986), 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648, the United States Supreme Court summarized four general principles, developed in prior decisions of that court, to be applied when considering the reach of an arbitration clause. The essence of these general principles, set out primarily in the "*Steelworkers* Trilogy" (*Steelworkers v. Am. Mfg. Co.* [1960], 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; *Steelworkers v. Warrior & Gulf Navigation Co.* [1960], 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; *Steelworkers v. Enterprise Wheel & Car Corp.* [1960], 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424) is pertinent to our review, and provides a framework for our inquiry.[1]

The first principle is that " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' * * * This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed to submit such grievances to arbitration." *AT & T Technologies,* 475 U.S. at 648–649, 106 S.Ct. at 1418, 89 L.Ed.2d at 655, quoting *Warrior & Gulf, supra,* 363 U.S. at 582, 80 S.Ct. at 1353, 4 L.Ed.2d at 1417.

---

1. The *Steelworkers* Trilogy of cases, *John Wiley & Sons,* and *AT & T Technologies* all involved interpretation of arbitration clauses in collective bargaining agreements. Although the case *sub judice* does not arise in the collective bargaining context, it is now clear that the general principles discussed reach beyond labor arbitration cases. See *PaineWebber Inc. v. Elahi* (C.A.1, 1996), 87 F.3d 589, 594, fn. 6 (recognizing that labor arbitration precedents can apply in a nonlabor arbitration setting).

The second principle is that "the question of arbitrability—whether a[n] * * * agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id.*, 475 U.S. at 649, 106 S.Ct. at 1418, 89 L.Ed.2d at 656.

The third rule is, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *Id.*, 475 U.S. at 649, 106 S.Ct. at 1419, 89 L.Ed.2d at 656.

The fourth principle is that "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *Id.*, 475 U.S. at 650, 106 S.Ct. at 1419, 89 L.Ed.2d at 656, quoting *Warrior & Gulf, supra*, 363 U.S. at 582-583, 80 S.Ct. at 1353, 4 L.Ed.2d at 1417.

Appellant COSE argues that the ninety-day arbitration demand provision contained in Section 7.7 of the Service Agreement should be read as imposing a "condition precedent" on the duty to arbitrate, and that the terms of the agreement reveal an intent by the parties not to confer jurisdiction upon an arbitrator to decide a controversy if that condition precedent is not met. Accordingly, COSE asserts that the issue here is a question of "arbitrability" and that the trial court ruled correctly when it found that COSE did not have to arbitrate anything. As a consequence of this argument, COSE's position must necessarily be that the parties agreed to have the court, rather than the arbitrator, determine the contours of the parties' compliance with Section 7.7(a)(i) of the agreement. In support of its position, COSE cites the recent United States Supreme Court decision in *First Options of Chicago, Inc. v. Kaplan* (1995), 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985, and suggests that its position is "vindicated" by the Supreme Court's consideration in that case regarding whether a trial court or an arbitrator should decide the "arbitrability" of a particular dispute.

When *First Options* is considered in its context, it does not support COSE's position. The key factor in *First Options* that distinguishes it from this case is that in *First Options*, the parties resisting arbitration had not personally signed the document containing the arbitration clause. See 514 U.S. at 941, 115 S.Ct. at 1922, 131 L.Ed.2d at 991. The Supreme Court contrasted the situation before it with a situation in which the parties to a valid arbitration clause have a contract providing for arbitration of some issues, and a party resists arbitration of an issue on the assertion that the contract does not require arbitration of that particular

issue. *Id.,* 514 U.S. at 944–945, 115 S.Ct. at 1924–1925, 131 L.Ed.2d at 994. The presumption *in favor of* arbitrability applies in the latter situation, which is also present in the case *sub judice.*

In the *First Options* situation, on the other hand, the presumption is *against* arbitrability because there is serious doubt that the party resisting arbitration has empowered the arbitrator to decide anything, including the arbitrator's own scope of authority. *Id.,* 514 U.S. at 945, 115 S.Ct. at 1924–1925, 131 L.Ed.2d at 994. The court in that instance is simply considering an aspect of the most fundamental question of all arbitration cases—the first principle of *AT & T Technologies*—that no party can be required to submit to arbitration when that party has not agreed to do so. The *First Options* conclusion regarding when a presumption against arbitrability applies is inapplicable to this case. COSE does not claim that the arbitration clause is invalid, and so accepts that the underlying fee dispute is arbitrable, but rather claims that the ninety-day "condition precedent" to arbitration was not complied with and thus arbitration is unavailable. The *First Options* opinion actually reinforces the fourth principle of *AT & T Technologies.* The presumption in favor of arbitrability applies in this case, so that the trial court should have ordered that the disagreement over the ninety-day demand provision be submitted to arbitration unless it could be determined with "positive assurance" that the dispute was not susceptible of arbitration.

Having determined that the presumption in favor of arbitrability applies here, we next consider whether COSE, the party opposing arbitration, has overcome the presumption. In *AT & T Technologies,* the Supreme Court declined to consider this question. After setting out the principles discussed above, and thereby detailing the correct approach, the Supreme Court remanded the cause to the district court for it to apply the analysis to the precise situation of that case. 475 U.S. at 651–652, 106 S.Ct. at 1420, 89 L.Ed.2d at 657–658. Based on the record before us, and because the answer is readily apparent from that record, we proceed to consider this question.

In the case *sub judice,* the narrow question to be determined is whether the parties intended to have the court or the arbitrator determine the construction of the ninety-day demand provision. Our inquiry is significantly affected by the broad scope of the arbitration clause here—the parties have agreed to arbitrate "[a]ll disputes and controversies of every kind and nature * * * that may arise as to the existence, construction, validity, interpretation or meaning, performance, non-performance, enforcement, operation, breach * * * " of the agreement.

In applying the standard set forth in *AT & T Technologies* that the party resisting arbitration must meet in order to overcome the presumption in favor of arbitrability, we ask "whether, because of express exclusion or other forceful evidence, the dispute over the interpretation of [the ninety-day demand provision]

is not subject to the arbitration clause." *Id.*, 475 U.S. at 652, 106 S.Ct. at 1420, 89 L.Ed.2d at 657–658. Our inquiry is " 'strictly confined' * * * to whether the parties agreed to submit disputes over the meaning of [the ninety-day demand provision] to arbitration. Because the * * * agreement contains a standard arbitration clause, the answer must be affirmative unless the contract contains explicit language stating that disputes respecting [the ninety-day demand provision] are not subject to arbitration, or unless the party opposing arbitration * * * adduces 'the most forceful evidence' to this effect from the bargaining history." *Id.*, 475 U.S. at 654–655, 106 S.Ct. at 1421, 89 L.Ed.2d at 659–660 (Brennan, J., concurring).

We apply general contract law, influenced by the presumption of arbitrability detailed above, to answer the question. "[T]he basic objective * * * is * * * to ensure that commercial arbitration agreements, like other contracts, ' "are enforced according to their terms," ' * * * and according to the intentions of the parties." *First Options*, 514 U.S. at 947, 115 S.Ct. at 1925, 131 L.Ed.2d at 995.

COSE can cite no "explicit language" providing that disputes respecting Section 7.7(a)(i) are not subject to arbitration. COSE can point only to the language of the ninety-day demand provision, and claim that the language itself evidences an intent not to submit this dispute to arbitration. However, the major weakness in COSE's argument is that someone, either the court or the arbitrator, must determine when a "controversy arose" in order to effectuate the intent of the parties as to that section. The language employed in Section 7.7(a)(i) is not so clear on what demands are untimely so as to be self-executing. Moreover, Gates McDonald does not agree, and has never agreed, that its demands are untimely.

In this case, the language of Section 7.7(a)(i) is itself in need of interpretation before it can be implemented, and that interpretation is in dispute. COSE's argument that a timely demand is a condition precedent to arbitration does not help it on this key point—that a legitimate dispute exists over whether the demand was timely. As the parties have empowered the arbitrator to hear "all disputes and controversies of every kind and nature," what the parties intended if the factual situation of this case arose must be determined by the arbitrator. In addition, COSE presented no evidence at all of negotiating history with respect to this decisive question. Although the ninety-day demand provision may indeed be a "condition precedent" to arbitration of the fee disputes, COSE has not demonstrated an intent to exclude the dispute surrounding Section 7.7(a)(i) from the reach of the arbitration clause, and so has not overcome the presumption in favor of arbitrability.

When all the considerations above are taken into account, this case is another example of the application of the general observation made in *John Wiley &*

*Sons,* 376 U.S. at 557, 84 S.Ct. at 918, 11 L.Ed.2d at 909, that matters regarding procedural questions growing out of the parties' dispute and bearing on its final disposition are best left to the determination of the arbitrator.

Our decision here is in accord with that of most courts of appeals in this state that have considered this issue. In *Independence Bank v. Erin Mechanical* (1988), 49 Ohio App.3d 17, 18, 550 N.E.2d 198, 200, the court stated, "[A] clause in a contract providing for dispute resolution by arbitration should not be denied effect ' "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. * * * " ' " *Gibbons–Grable v. Gilbane Bldg. Co.* (1986), 34 Ohio App.3d 170, 173, 517 N.E.2d 559, 562 (quoting from *Siam Feather & Forest Products Co. v. Midwest Feather Co.* [S.D.Ohio 1980], 503 F.Supp. 239, 241, affirmed [C.A.6, 1981], 663 F.2d 1073). Any doubts should be resolved in favor of coverage under the contract's arbitration clause. *Id.*" See, also, *e.g., Bd. of Library Trustees, Shaker Hts. Pub. Library v. Ozanne Constr. Co., Inc.* (1995), 100 Ohio App.3d 26, 651 N.E.2d 1356; *Didado v. Lamson & Sessions Co.* (1992), 81 Ohio App.3d 302, 610 N.E.2d 1085.

In its second proposition of law, COSE argues that Gates McDonald made a statement in its answer that should be taken as a judicial admission that Gates McDonald's arbitration demand was untimely. Gates McDonald contends that it has never admitted the untimeliness of its arbitration demand. In line with our discussion above, this point of disagreement is for the arbitrator to decide; it is not for the courts. Consequently, because any discussion of this issue would take us beyond the scope of our consideration, we do not address it. Furthermore, our decision here should not be read as any comment on the construction to be given to Section 7.7(a)(i). The parties' arguments regarding the interpretation to be given to that provision should be addressed to the arbitrator.

For all the foregoing reasons, the judgment of the court of appeals is affirmed. This cause is remanded to the trial court for a declaration that the parties must submit to arbitration.

*Judgment affirmed*
*and cause remanded.*

MOYER, C.J., PFEIFER and LUNDBERG STRATTON, JJ., concur.

COOK, J., concurs in judgment only.

DOUGLAS and F.E. SWEENEY, JJ., dissent.

---

DOUGLAS, J., dissenting. I respectfully dissent. I would reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

F.E. SWEENEY, J., concurs in the foregoing dissenting opinion.