JOURNAL ENTRY AND OPINION
This is an appeal and cross appeal from an order of Judge Christine McMonagle, a foreclosure action that denied cross-appellant Milo Corporation's (Milo) motion to lift a December 23, 1999 stay order imposed pending completion of an arbitration of claims against appellee The Barden Robeson Corp. (Barden). Appellant Steven C. Hardwick claims this order wrongfully requires him to arbitrate his third-party claims against Barden, while Milo claims its foreclosure action is not subject to arbitration and it cannot be forced into arbitration without its consent. For the following reasons we affirm.
On December 6, 1995, Hardwick of Columbus, Ohio and Mickey G. Miller and Joan Carlson-Miller (the Millers) of Broadview Hts., Ohio, entered into an agreement whereby in exchange for a loan of $38,000 and co-signing a construction loan for the building of a residence on the Millers' Akins Road lot, Hardwick would receive a 1/3 interest in the property and the greater of $10,000 or 50% of the profit from the sale of the home in addition to his loan and interest. On December 28-29, 1995, Hardwick and the Millers executed a Building Loan Agreement with Milo to lend them $275,000 in exchange for a promissory note secured by an open end mortgage on the Akins Road property. On January 3, 1996, the Millers executed a contract with Barden[1] to provide materials for the construction of the Normandy model of a Barden home, a custom pre-engineered shell, with a delivery date of February 2, 1996. The contract listed the purchasers as Miller/Hardwick.
Although the Millers and Hardwick had assumed a completion date prior to August 1996, various construction delays were encountered and by June 20, 1997, with the home yet unfinished, Hardwick and the Millers had obtained an additional $137,800 in loans from Milo, secured by notes and mortgages, for a total indebtedness of $412,800. By that time Milo had advised the Millers that it was taking over coordination of finishing the home. Apparently, due to a number of problems encountered with materials, city building code requirements and contractors/subcontractors, the structure remains unfinished to this day.
On June 26, 1999, the Millers notified Barden they had made a demand for arbitration, as required under their contract, with the American Arbitration Association and alleged damages of $500,000:
 arising from [Barden's] breach of a contract to design and provide a material package for the construction of a personal residence. In addition [the Millers] seek treble damages and attorney fees under the Ohio Consumer Sales Practices Act and the Federal Magnuson Moss Consumer Warranty Act.
On August 4, 1999, Milo filed this complaint for money damages and foreclosure against the Millers, Hardwick and various public and private lien holders. On August 22, 1999, Hardwick answered and counterclaimed incorporating a third-party complaint against Barden alleging that Milo and Barden were alter egos and joint venturers and their acts and omissions are attributable and imputable to one another. He claimed to be an intended beneficiary to the contract between the Millers and Barden and contended that Milo and Barden are in breach of their oral and/or written contracts with defendant Hardwick. His nine counts alleged, among others, fraud, negligent misrepresentation, breach of contract, breach of fiduciary duty and lender liability. The Millers did not answer the complaint.
On November 1, 1999, Barden filed a motion to stay the proceedings on the basis that, because Hardwick sued it as a third-party beneficiary to the Miller contract containing the arbitration clause, he should join in the AAA arbitration. Additionally, it asserted that he was a partner with the Millers and, therefore, subject, under agency principles, to the arbitration provision. Hardwick opposed the stay asserting he could not be forced to arbitrate under a contract he had not signed. Although he denied he was a partner with the Millers, Hardwick claimed that partnership law did not operate to compel him to arbitrate his claims against Barden, and that Barden had waived its right to arbitrate by noticing a witness for deposition after moving for the stay. Additionally, he argued that many of his claims did not arise out of the Miller-Barden materials contract and, therefore, were not arbitrable in any event.
On December 23, 1999, the following order was journalized.
 THIRD PARTY DEFT. BARDEN AND ROBESON MOTION FILED 11/1/99 TO STAY PROCEEDINGS IS GRANTED. CASE STAYED UNTIL ARB. PROCEEDINGS COMPLETED. COUNSEL TO NOTIFY COURT OF COMPLETION OF ARB. PROCEEDINGS. CASE TO BE REACTIVATED UPON NOTICE OF COUNSEL * * * VOL 2413 PAGE 297 * * * NOTICE ISSUED. DISPOSED OTHER 12/23/99.
Hardwick, however, never joined the Miller-Barden arbitration and, because of disputes over the scope of the arbitration proceedings and the Millers' refusal to pay the required deposits to the arbitration panel, the AAA has suspended those proceedings indefinitely until all deposits are made. On April 27, 2000, Barden filed a motion with the AAA to dismiss the arbitration for failure to prosecute, but it appears the panel has not addressed it.
On June 6, 2000, Milo filed a motion to lift the December 1999 stay order so that its foreclosure claims could proceed. Barden responded that any relief given to Milo should be limited to Milo's foreclosure claims against Hardwick and the Millers, and should not apply to any of Hardwick's claims involving Barden. It contended that Hardwick had never joined the arbitration as ordered and the Millers had intentionally frustrated the progress of the AAA proceedings. Hardwick, in reply to Milo's motion, claimed that he was never ordered to join the Miller-Barden arbitration and had merely been waiting for that arbitration to conclude so that once the stay was lifted he could pursue his claims against Milo and Barden in court.
On July 12, 2000, the following order was journalized:
 AS FOUND PREVIOUSLY BY THIS COURT, BARDEN ROBISON [sic] IS ENTITLED TO HAVE THE THIRD-PARTY CLAIMS AGAINST IT ARBITRATED. SOME OF THESE CLAIMS ALLEGE THAT BARDEN ROBISON AND PLTF ARE ALTER EGOS AND HAVE COMMITTED FRAUD. IF THESE CLAIMS ARE PROVED, PLTF WOULD NOT PREVAIL ON ITS CLAIMS IN THIS CASE. BARDEN ROBISON OBJECTS TO LIFTING THE STAY AS TO THE CLAIMS AGAINST IT.
 SINCE BARDEN ROBISON AND PLTF ARE ALLEGED TO BE ALTER EGOS, THE STAY PENDING ARBITRATION CANNOT BE LIFTED AS TO PLTF'S CLAIMS AND NOT AS TO CLAIMS AGAINST BARDEN 
ROBISON. ACCORDINGLY, PLTF'S MOTION TO LIFT STAY IS DENIED. OSJ VOL 2483 PG 0505 * * *. NOTICE ISSUED.
Hardwick and Milo filed an appeal and cross appeal.
In his assignment of error, Hardwick asserts:
 THE TRIAL COURT ERRED IN HOLDING IN ITS JULY 12, 2000 ORDER THAT DEFENDANT STEVEN P. HARDWICK IS REQUIRED TO ARBITRATE HIS CLAIMS AGAINST THIRD-PARTY DEFENDANT BARDEN ROBESON. (JULY 12, 2000 DOC. NO. 6, ORDER.)
Hardwick contends he never agreed to arbitrate his claims against Barden, he never signed any document containing an arbitration clause, and he cannot be bound by the Millers' agreement to such a contract provision even if he was their partner. While we agree, in principle, that a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit,[2] Hardwick based his claims against Barden on the very contract he disavowed and, therefore, positioned himself within an exception to that rule.
In the arbitration context, the [estoppel] doctrine recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him. To allow [a plaintiff] to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act.[3]
Under the doctrine of equitable estoppel, Hardwick is subject to the arbitration provisions of the Miller-Barden contract regardless of his relationship with the Millers.
Interestingly, Hardwick argues that many of his claims against Barden were not subject to arbitration because they did not arise out of the Miller-Barden contract and the trial court should have denied a stay of the case,[4] yet the order from which he appeals is the July 2000 entry denying a motion to lift the December 1999 stay order. He contends, however, he was not compelled to arbitrate his claims until the July 2000 order. We do not agree.
Under R.C. 2711.02,
 If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration. An order under this section that grants or denies a stay of a trial of any action pending arbitration, including, but not limited to, an order that is based upon a determination of the court that a party has waived arbitration under the arbitration agreement, is a final order and may be reviewed, affirmed, modified, or reversed on appeal pursuant to the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code.
It is abundantly clear from the record[5] that Barden's motion requested a stay of proceedings so that Hardwick would be required to join in the already-pending Miller-Barden AAA arbitration. Because the dispute between the Millers and Barden was not part of the foreclosure lawsuit, neither of them would benefit from a stay to pursue their arbitration. Therefore, the issues required to be submitted to arbitration by the December 23, 1999 order could relate only to Hardwick's third-party claims against Barden.
Hardwick asserts, both in response to Milo's June 6, 2000 motion to lift the stay and before this court, that he was never ordered to join his claims against Barden in the Miller-Barden arbitration, and that the December 23, 1999 order merely required him to wait until Miller and Barden concluded their arbitration before he could press his third-party claims in court. This interpretation seems somewhat disingenuous. Barden's motion made no request for or mention of a stay to pursue the Miller-Barden arbitration absent Hardwick. It is quite revealing that Hardwick's appellate brief presents the same five arguments in support of his assignment of error that he presented in arguing against the stay. If the December 1999 order did not require him to join the arb proceedings referenced in that order, it is impossible to think of what else it could have meant. There could not have been any ambiguity as to the meaning of the order, considering the arguments advanced by the parties in their briefs addressing the issues relevant to whether a stay should have been granted.
We hold that Hardwick was required to join the Miller-Barden arbitration by the order of December 23, 1999. Because an order granting a stay under R.C. 2711.02 is a final, appealable order, supra, he had thirty days to appeal that determination, per App.R. 4. Since the only appeal was taken from the June 2000 order denying the motion to lift the stay, any error that Hardwick may have asserted as to the propriety of staying the case pending his inclusion in the Miller-Barden arbitration has been waived as untimely. This assignment of error is without merit.
In its cross-appeal, Milo sets forth two assignments of error which shall be discussed together:
 THE TRIAL COURT ERRED IN STAYING THE PROCEEDINGS FOR FORECLOSURE AND JUDGMENT ON NOTES ISSUED BY THE DEFENDANTS FOR THE REASONS THAT:
 (A) R.C. S2711.01(B)(1) EXCLUDES FORECLOSURE PROCEEDINGS FROM ARBITRATION; AND,
 (B) THE CONTRACT BETWEEN THE PLAINTIFF MILO CORPORATION AND THE DEFENDANTS MICKEY G. MILLER AND JOAN CARLSON-MILLER AND STEVEN C. HARDWICK CONTAINS NO PROVISION REQUIRING REMEDIES AND DISPUTES TO BE SUBMITTED TO ARBITRATION.
Milo argues that the judge impermissibly referred the foreclosure aspects of this case to arbitration, and, along with Hardwick, claims to have misconstrued the December 23, 1999 order staying the case. Milo is correct in pointing out that R.C. 2711.01(B)(1) exempts proceedings involving the determination of title to real property from arbitration. Upon resolution of the claims against Barden asserted by the Millers and Hardwick, as noted in the trial court's December 23, 1999 order, the parties are to notify the court so that Milo's claims in foreclosure and Hardwick's counterclaims may be addressed by the court.
Milo argues that it is being forced into arbitration because some of the claims to be arbitrated concern whether Milo and Barden are alter egos and should share in the responsibility for any damages either may have caused the Millers and Hardwick.[6] While we decline to offer an advisory opinion as to any collateral estoppel arguments that may eventually be raised by the parties, upon conclusion of the arbitration, which may affect the validity of Milo's foreclosure claims, we note that Milo, at this point, is free to interject itself into the arbitration proceedings to the extent that it feels the need to protect its own interests. Because Milo made no effort whatsoever to oppose Barden's November 1, 1999 motion to stay, and because it also failed to timely appeal the December 1999 stay order, Milo, like Hardwick, has also foregone its right to appeal the trial court's ruling on Barden's motion to stay. Milo's cross-assignments of error are, in part, well taken and, in part, overruled.
Judgment affirmed.
It is ordered that the appellee recover from the appellants its costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 _______________________ ANNE L. KILBANE, JUDGE:
JAMES D. SWEENEY, P. J., CONCURS IN JUDGMENT ONLY WITH SEPARATE CONCURRING OPINION; COLLEEN CONWAY COONEY, J. CONCURS IN JUDGMENT ONLY WITH SEPARATE CONCURRING OPINION.
[1] Milo and Barden, separate corporations, share a common address, fax and telephone numbers, and some officers/employees.
[2] Council of Smaller Enterprises v. Gates, McDonald Co. (1998),80 Ohio St.3d 661, 687 N.E.2d 1352.
[3] Gerig v. Kahn (Apr. 6, 2001), Lucas App. No. L-00-1135, unreported, quoting Avila Group, Inc. v. Norma J. of California,426 F. Supp. 537, 542 (S.D.N.Y. 1977), 206 F.3d at 418.
[4] Appellant Hardwick's Brief page 16.
[5] The parties addressed the stay and Hardwick's inclusion in the Miller-Barden arbitration in Barden's November 1, 1999 motion to stay, Hardwick's November 17, 1999 Memorandum Contra, Barden's November 24, 1999 motion for leave to reply with memorandum attached, and Hardwick's December 7, 1999 motion for leave to file a surreply with memorandum attached and December 21, 1999 supplemental brief.
[6] As noted above, however, the issues referred to arbitration center around Hardwick's third-party claims against Barden. These claims revolve around the contract signed by the Millers and Barden, and do not involve the mortgages and notes executed between Milo and the Millers and Hardwick.