JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Premcar Company, Ltd. ("Premcar"), appeals from the decision of the trial court that denied its motion to stay pending arbitration. Premcar contends that the parties agreed to submit claims relating to the construction of a commercial office building to binding arbitration. Premcar maintains this included the claims advanced by Baywest's[1]
complaint. For the reasons that follow, we affirm the decision of the trial court.
 {¶ 2} On September 30, 2002, the parties entered a Standard Form of Agreement Between Owner (Premcar) and Contractor (Baywest) for the construction of an office building in Westlake, Ohio. Relevant terms from the extensive Agreement will be referenced below where appropriate for disposition of this appeal.
 {¶ 3} On April 26, 2004, Baywest commenced this action claiming it sustained damage in excess of $231,925.77, for which Premcar is liable. Baywest averred in its complaint, inter alia, that "[a]ll conditions precedent, pursuant to the terms of the Contract relating to the presentation of claims and the filing of suit have been satisfied by Baywest." (Complaint at ¶ 23.)[2]
 {¶ 4} On June 21, 2004, Premcar filed its answer and counterclaim, asserting binding arbitration as one of its affirmative defenses but also including a claim for relief in excess of $145,000 on its counterclaim. Baywest answered the counterclaim, and a few weeks later, Premcar filed its notice of voluntary dismissal of counterclaims. Premcar then moved for a stay of the proceedings pending arbitration, which Baywest opposed. The trial court's denial of Premcar's motion to stay is the subject of this appeal. Premcar's sole assignment of error is as follows:
 {¶ 5} "I. The trial court erred in declining to stay this matter pending arbitration."
 {¶ 6} In Council of Smaller Enterprises v. Gates, McDonald Company (1998), 80 Ohio St.3d 661, 665-66, the Ohio Supreme Court set forth four general principles to be applied when considering the reach of an arbitration clause:
 {¶ 7} "1. A party is not obligated to submit to arbitration a dispute he has not agreed to so submit;
 {¶ 8} "2. `Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator. [citations omitted.]';
 {¶ 9} "3. `in deciding whether the parties have agreed to submit a grievance to arbitration, a court is not to rule on the potential merits of the underlying claims. [citations omitted.]'; and
 {¶ 10} "4. `where the contract contains an arbitration clause, there is a presumption of arbitrability * * * "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" [citations omitted.]"
 {¶ 11} Applying these principles, we find that the trial court properly denied the motion to stay.
 {¶ 12} The parties' agreement was a modified version of AIA Document A201. In particular, the Agreement adopted the "1987 Edition of AIA Document A201" but included as Exhibit "D" thereto "supplementary conditions of the contract for construction (supplement to AIA201). The Supplementary General conditions explicitly "modify, change, delete from or add to the `General Conditions of the Contract for Construction,' AIA Document A201, 1987 Edition, and shall supersede the General Conditions to the extent inconsistent or in conflict therewith."
 {¶ 13} Article 4 governs the Administration of the Contract. Paragraph 4.3 sets forth terms governing "claims and disputes" and particularly contemplates the possibility of litigation. See paragraph 4.3.2. ("Claims * * * shall be referred initially to the Architect * * * as a condition precedent to arbitration or litigation * * *."). Although paragraph 4.5 set forth the provisions of Arbitration, the supplementary general conditions entirely deleted it and substituted different terms in its place. Paragraph 4.5.1 establishes the claims to be submitted to arbitration "subject to the limitations and restrictions stated in this paragraph 4.5." Paragraph 4.5.4 provides as follows:
 {¶ 14} "All demands for arbitration and all answering statements thereto, which include any monetary claim, must contain a statement that the total sum or value in controversy as alleged by the party making such demand or answering statement is not more than $100,000 (exclusive of interest and arbitration fees and costs). The arbitrators will not have jurisdiction, power or authority to consider or make findings (except in denial of their own jurisdiction) concerning any controversy where the amount at issued [sic] is more than $100,000 (exclusive of interest and arbitration fees and costs) or to render a monetary award in response thereto against any party which totals more than $100,000 (exclusive of interest and arbitration fees and costs)."
 {¶ 15} The foregoing limits the jurisdiction over arbitrable claims to those where the total sum or value in controversy is $100,000 or less (exclusive of interest and arbitration fees and costs). The particular language is not reasonably susceptible to any other interpretation. Although Premcar attempts to construe the $100,000 limitation as a cap on damages, this is not supported by the plain language of the agreement. It clearly provides that arbitrators lack jurisdiction, power or authority to consider or make findings in any controversy where the total amount exceeds $100,000. This is unlike the procedural prerequisite to arbitration addressed in Council of SmallerEnterprises, on which Premcar relies. In that case, the Ohio Supreme Court addressed a 90-day demand for an arbitration provision wherein one party claimed the demand was timely and the other argued it was not, thereby precluding arbitration. The resolution turned on a determination of when a "controversy arose." After determining the dispute among the parties was subject to arbitration, the Ohio Supreme Court held it was for the arbitrators to decide the procedural issue of timeliness, since "the language employed [by the 90-day demand provision] * * * [was] not so clear on what demands [were] timely so as to be self-executing."
 {¶ 16} Unlike the unclear provisions addressed in Council ofSmaller Enterprises, the jurisdiction provisions before us are quite clear. The provisions do not require an analysis or construction for proper application. Quite simply, the Agreement precludes the arbitrators from exercising any authority unless the total sum of the demand is $100,000 or less.
 {¶ 17} In this case, Baywest's claims (and Premcar's initial counterclaim) exceeded the $100,000 jurisdictional limit. Therefore, if the parties attempted to submit this controversy to arbitration, the arbitrators would be explicitly limited to making only a finding that they lack jurisdiction over the controversy according to the above-quoted terms. To stay proceedings and require the parties to submit the matter to arbitration for a perfunctory order denying jurisdiction is improvident.
 {¶ 18} Although Premcar maintains that Baywest improperly aggregated claims in an effort to circumvent arbitration, we do not agree. The exhibits attached to the complaint break down the expenses with some detail and provide some basis for how the claim for relief was calculated. To the extent that the Agreement requires notice of each claim for an increase in the Contract Sum and/or for an increase in the Contract Time, Baywest maintains that it "provided timely notice to the owner and its representatives of all impacts, delays, interferences and damages and claims pursuant to the term of the Contract." Complaint at ¶ 20; see, also, ¶ 23 ("all conditions precedent * * * have been satisfied by Baywest."). While it is too premature to verify whether Baywest satisfied the notice conditions, the Agreement does not require the parties to pursue a succession of these "claims" through piecemeal arbitrations.
 {¶ 19} Lastly, Premcar asserts that Baywest failed to satisfy the condition precedent contained in Paragraph 4.3.2 that requires claims to be "referred initially to the Architect for action as provided in Paragraph 4.4." Although not argued below, Premcar maintains that Baywest did not submit the claim to the Architect as required by the Agreement, which is a condition precedent to litigation. Baywest, however, in its Complaint maintained "[a]ll conditions precedent, pursuant to the terms of the Contract relating to the presentation of claims and the filing of suit have been satisfied by Baywest." (Complaint at ¶ 23.) On appeal, Baywest submitted an unopposed motion to supplement the record with a copy of the claim it claims to have submitted to the project Architect on March 15, 2004. Based on the pleadings and record evidence, it appears, at this time, that Baywest satisfied the condition precedent to initiating litigation.
 {¶ 20} Because the amount in controversy exceeds the jurisdictional limit provided for arbitrable claims under the parties' Agreement, the trial court did not err by denying Premcar's motion to stay proceedings. The remaining issues raised by Premcar are moot.
 {¶ 21} Premcar's sole assignment of error is overruled. Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., P.J., and McMonagle, J., concur.
[1] "Baywest" refers to plaintiff-appellee Baywest Construction Group, Inc.
[2] On June 30, 2005, Baywest moved to supplement the record with a copy of a claim for $266,186.05 plus interest that it submitted to the project Architect on March 15, 2004.