OPINION *Page 2 
{¶ 1} Plaintiff-appellant, Ronald J. Klausing ("Klausing") brings this appeal from the judgment of the Court of Common Pleas of Allen County staying the case while arbitration is completed.
 {¶ 2} On November 1, 2000, Klausing and defendant-appellee Chef Solutions, Inc. ("SCIS") entered into a merger agreement. Part of the agreement concerned the "Potato Line Payment," which was the repayment of $3.5 million contingent upon increased potato production and earnings levels beyond the benchmark. Other contingencies were included in the contract which required immediate repayment plus interest regardless of whether the benchmark was reached. To calculate performance in a fiscal year, SCIS was required to submit a "Potato Line Certificate" by the deadline. This certificate was not submitted by *Page 3 
the deadline. Anticipating a dispute over the calculations, the parties provided a dispute resolution procedure in which an accounting firm would be hired to arbitrate the disputed calculations.
 {¶ 3} On May 18, 2005, Klausing filed a complaint alleging that SCIS owes him $3.5 million plus interest. Klausing claimed, among other things, that one of the contingencies had occurred, thus causing the loan to become due and owing immediately. SCIS claimed that the matter could not be brought in the trial court because the contract required the matter be taken to the arbitrator. On August 23, 2005, the trial court dismissed the complaint with prejudice. Klausing appealed the dismissal to this court. On May 1, 2006, this court reversed the judgment of the trial court and sustained both assignments of error raised by Klausing.
 {¶ 4} The basis for the prior ruling of this court was the unequivocal provisions of the contract which stated as follows.
 Within twenty (20) business days after receipt of a Potato Line Certificate, Klausing shall notify SCIS of his agreement or disagreement with SCIS's Potato Line Calculations, Klausing shall provide SCIS with a certificate containing Klausing's calculation of production levels and EBITDA from the beginning of the applicable fiscal year end calculated in accordance with Section 2.8(c) and the amount of the Potato Line Payment, if any, to which Klausing asserts he is entitled pursuant to Section 2.8(a), 2.8(b), or 2.8(d) (collectively "Klausing's Potato Line Calculations"). * * * If Klausing and SCIS do not resolve such differences within ten (10) days after the date of delivery by Klausing of Klausing's Potato Line Calculations, Klausing and *Page 4 SCIS shall select (or, absent agreement of Klausing and SCIS, the American Arbitration Association in New York City shall designate) an accounting firm of recognized national standing with substantial experience in the food business (the "Potato Line Arbitrator") to resolve the disputed matters (the "Potato Line Disputed Matters") and to calculate the amount of the Potato Line Payment, if any to which Klausing is entitled pursuant to Section 2.8(a), 2.8(b) or 2.8(d); provided that the Potato Line Arbitrator's determination of such amounts shall not be less that SCIS's Potato Line Calculations or more than Klausing's Potato Line Calculations; provided further that the Potato Line Disputed Matters shall be the only items to be determined by the Potato Line Arbitrator.
Contract, 18. After reviewing the contract, this court determined that the above section was the only portion of the contract that set forth a provision for arbitration. This court then continued to find that since SCIS, by its own admission, had denied Klausing access to the financial records necessary for Klausing to calculate and deliver his own Potato Line Certificate, the arbitration clause had not yet been triggered. The dismissal was reversed and the matter was remanded for further proceedings.
 {¶ 5} On January 31, 2006, Klausing filed a motion for default judgment based upon SCIS's failure to file an answer to the complaint. SCIS filed its response to the motion for default judgment on February 23, 2007, claiming that it did not have to file an answer because all of the provisions were subject to arbitration. On March 5, 2007, the trial court denied the motion for default judgment and ordered Klausing to provide its Potato Line Certificate which would *Page 5 
permit arbitration to proceed. On March 28, 2007, SCIS filed a motion to dismiss. On April 17, 2007, the trial court granted a stay of the case pending arbitration since Klausing had filed his Potato Line Certificate. Klausing appeals from this judgment and raises the following assignments of error.
 The [trial court] erred in staying this case in favor of arbitration because [SCIS] materially breached the arbitration clause upon which they rely, rendering it unenforceable, and because [SCIS has] still failed to satisfy the conditions precedent required to invoke the arbitration clause.
 The [trial court] erred in staying this case in favor of arbitration because [Klausing's] claims fall outside the scope of the limited arbitration clause at issue.
 The [trial court] erred in ruling that [SCIS was] not in default.
 {¶ 6} Klausing first claims that the trial court erred in granting the stay in favor of arbitration because the arbitration clause is unenforceable and the required conditions precedent still have not been filed. The contract provides as follows.
 (e) SCIS shall, as soon as reasonably practicable after the applicable fiscal year end, but in any event by February 5 following such fiscal year end, prepare and deliver to Klausing a certificate (a "Potato Line Certificate") of SCIS stating potato production levels and EBITDA from the beginning of the applicable fiscal year until the applicable fiscal year end, calculated in accordance with Section 2.8(c), and the amount of the Potato Line Payment, if any, to which Klausing is entitled pursuant to Section 2.8(a), 2.8(b) or 2.8(d) ("SCIS's Potato Line Calculation"). *Page 6 
 (f) Following delivery of a Potato Line Certificate by SCIS, SCIS shall cooperate with Klausing and his independent accountant in connection with their review of the Potato Line Certificate and SCIS's Potato Line Calculations, and shall, to the extent reasonably requested, permit Klausing's accountants to review and make copies of all work papers, schedules and calculations used in the preparation thereof.
Contract, 18. One of the many issues claimed in the complaint is that SCIS breached the contract by not providing its Potato Line Calculation until June 9, 2004. In addition, SCIS did not provide the necessary information that would allow Klausing to calculate his Potato Line Certificate until after the original appeal in 2006. Klausing still alleges that he has not received all of the necessary documents from which to make his calculations.
 {¶ 7} Klausing argues that since SCIS breached the contract by not timely providing the certificate when time was of the essence, SCIS cannot now require Klausing to perform. This court notes that this issue was not raised on the prior appeal, but was raised before the trial court upon remand. Thus the issue has not previously been determined by this court. The contract specifically states that "[w]ith regard to all dates and time periods set forth or referred to in this Agreement, time is of the essence." Contract, 70. A material breach of contract is one so fundamental to the contract that the failure to perform makes it impossible for the other party to perform. O'Brien v. Ohio StateUniv., 10th Dist. No. 06AP-946, 2007-Ohio-4833, ¶ 56. When a contract specified that time is of *Page 7 
the essence, any delay in performance is generally viewed as a material breach. Morton Bldgs. Inc. v. Correct, 10th Dist. No. 06AP-851, 2007-Ohio-2788, ¶ 30. "When it is said that time is of the essence, the proper meaning of the phrase is that the performance by one party at the time specified in the contract or within the period specified in the contract is essential in order to enable him to require performance from the other party." Lake Ride Academy v. Carney (1993),66 Ohio St.3d 376, 378, 613 N.E.2d 183 (quoting 6 Williston on Contracts (3 Ed. 1962) 181, Section 846).
 {¶ 8} Here, it is undisputed that SCIS did not provide its potato line certificate by the date required by the contract. In fact, SCIS did not provide the certificate until June 9, 2004. Thus, it is clear from the undisputed facts that SCIS did not timely comply with the deadline set forth in the contract even though the contract stated that time was of the essence. Because SCIS failed to perform, it cannot now require Klausing to perform under the contract. Additionally, there are questions of fact raised as to whether SCIS has still completely complied with its prerequisites under the contract. Thus, Klausing cannot, by law, be required to perform under the contract, including the provision requiring Klausing to use the arbitration provision to determine the value of the potato line. The first assignment of error is sustained. *Page 8 
 {¶ 9} Klausing's second assignment of error claims that the trial court erred in determining that his underlying claims are within the scope of arbitration. "Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." Council of Smaller Enterprises v. Gates (1998),80 Ohio St.3d 661, 665, 687 N.E.2d 1352. The question of whether an agreement requires the parties to submit the dispute to arbitration is an issue for judicial determination. Id. To determine whether arbitration is appropriate, we must first look to whether the parties agreed to arbitrate an issue in dispute, not to a general policy goal in favor of arbitration. E.E.O.C. v. Waffle House Inc. (2002),534 U.S. 279, 122 S.Ct. 754, 151 L.Ed.2d 755.
 {¶ 10} The arbitration provision of the contract is very clear. The arbitrator's authority is limited to the potato line disputed matters, which is the difference between SCIS's potato line calculations and Klausing's potato line calculations. Contract, 18. The arbitrator has no authority to resolve any other issues. The issues raised in the complaint are not questions concerning the value of the potato line calculations, but rather whether SCIS breached the contract. Specifically, Klausing claims that 1) the contingent note is currently due and payable and SCIS has failed to pay it; 2) SCIS breached the contract by failing to complete the expansion project, interfering with Klausing's performance of the *Page 9 
contract, and failing to pay the potato line payment as a result of numerous breaches; 3) breach of covenant of good faith and fair dealing by failing to compete the expansion; and 4) breach of contract by I K for failing to complete the expansion as agreed. These claims include questions of fact as to whether the contract was breached and if events occurred which would trigger the immediate payment of the note. None of these additional claims are subject to arbitration as they were not within the authority granted to an arbitrator pursuant to the terms of the contract. Thus, the second assignment of error is sustained.
 {¶ 11} In the third assignment of error, Klausing claims that the trial court erred in denying the motion for default judgment. This court cannot address this issue as the denial of a motion for default judgment is not a final appealable order.
 (B) An order is a final appealable order that may be reviewed, affirmed, modified, or reversed, with or without retrial when it is one of the following:
 (1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment;
R.C. 2505.02. A denial of default judgment does not prevent a judgment in the favor of the appellant. Thus it is not a final appealable order and any assignment of error based thereon is premature. The third assignment is not properly before the court and is thus not addressed. *Page 10 
 {¶ 12} The judgment of the Court of Common Pleas of Allen County is reversed and the cause is remanded for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
 SHAW and PRESTON, JJ., concur. *Page 1