[Cite as *Avery v. Academy Invests.*, 2019-Ohio-3509.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOHN T. AVERY,                              :

      Plaintiff-Appellant,                 :

                                         No. 107550

      v.                                          :

ACADEMY INVESTMENTS, L.L.C.,                :
ET AL.

                                               :

      Defendants-Appellees.

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 29, 2019

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-895362

### *Appearances:*

Singerman, Mills, Desberg & Kauntz Co., L.P.A., and
Christopher O'Connell, *for appellant*.

Dinn, Hochman & Potter L.L.C., Thomas A. Barni and
Jason A. Whitacre, *for appellees*.

EILEEN A. GALLAGHER, J.:

{¶ 1}  Plaintiff-appellant John Avery filed a complaint seeking judicial dissolution of two companies of which he claims to be a member, defendants-appellees Academy Investments, L.L.C. ("AI") and the Academy of Fetish Arts,

L.L.C. ("AFA").[1] Avery also sought an accounting for both companies. The appellees moved to dismiss, and alternatively, to stay the action pending arbitration and mediation as required by the arbitration clauses in both companies' operating agreements. The appellees argued that Avery's claims were subject to arbitration but also disputed Avery's contention that he was a member of the companies and attached evidence indicating that Avery's membership in both was terminated prior to him filing the complaint. The trial court granted the motion, staying the entire case "pending mandatory, binding arbitration of Avery's claims in accordance with the provisions of the AI and AFA operating agreements." For the reasons that follow, we affirm.

{¶ 2} On appeal, Avery asserts one assignment of error:

The trial court erred by staying Avery's judicial-dissolution action pending binding arbitration.

**Relevant Background Facts**

{¶ 3} As noted, Avery claims that he is a member of both AI and AFA despite evidence indicating that he is not.[2] Both AI and AFA are Ohio limited liability companies and governed by operating agreements. The AI operating

---

[1] In his complaint, Avery additionally named ten individual members and officers of the companies as defendants, all of whom are parties to this appeal.

[2] We will not address the merits of Avery's claims pursuant to this appeal. *See Council of Smaller Ents. v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 666, 1998-Ohio-172, 687 N.E.2d 1352, quoting *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 655, 106 S. Ct. 1415, 89 L.Ed.2d 648 (1986) ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims.").

agreement provides that "[t]he terms and conditions of this Agreement will govern the Members within the limited liability company," and that "[t]his Agreement contains the entire agreement between the parties." Similarly, the AFA operating agreement provides that "[t]he terms and conditions of this Agreement will govern the Keystone Members within the limited liability company,"[3] and that "[t]his Agreement contains the entire agreement between the parties."

{¶ 4} Each operating agreement addresses the issue of membership in the companies. For example, both agreements list the company members, delineate member rights and responsibilities, detail the nature of a member's interest in the company as well as outline to what a member is entitled by virtue of membership. This includes the specific right of access to the company's financial records. The agreements also contain mechanisms for admitting new members and removing existing members.

{¶ 5} The AI and AFA operating agreements contain arbitration clauses. Though there is some difference between the two clauses, for our purposes they are functionally equivalent.[4] The AI arbitration clause applies to any dispute that "arises

---

[3] Although the AFA operating agreement distinguishes between "Keystone Members" and "Members," such distinction is irrelevant to our analysis and we will refer simply to "members."

[4] For example, the AFA arbitration clause initially requires the parties attempt to informally resolve a covered dispute "within thirty days, or a longer period of time if the parties to the dispute agree * * *" whereas the AI arbitration clause require attempted informal resolution of such a dispute for "a reasonable period." Nevertheless, where this "friendly consultation" fails, both clauses then require mediation. Finally, where mediation fails, both clauses require "final and binding arbitration."

out of or in connection with [the AI operating agreement] * * *." The AFA arbitration clause applies to any dispute that "arises out of, in connection with or is related to [the AFA operating agreement] * * *."

{¶ 6} Avery acknowledges that he is bound by, and subject to, both the AI and AFA operating agreements. Further, he recognizes that both agreements contain arbitration clauses. His argument is instead that judicial dissolution does not "arise" out of the agreements and is thus outside of the scope of the arbitration clauses. We disagree.

## Law and Analysis

## Arbitration

{¶ 7} As a preliminary matter, we recognize that in Ohio, the legislature and the courts have expressed a strong preference for arbitration as a means of dispute resolution. *See Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 15; *see also* R.C. 2711.01(A) ("A provision in any written contract * * * to settle by arbitration a controversy that subsequently arises out of the contract * * * shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract."). R.C. 2711.02(B) permits a court to stay litigation pending arbitration:

> If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement * * *.

{¶ 8} When considering the reach of an arbitration clause we are guided by four general principles that are "pertinent to our review" and provide a "framework for our inquiry." *Council of Smaller Ents. v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 665, 1998-Ohio-172, 687 N.E.2d 1352. The United States Supreme Court has outlined these principles as follows:

> [1.] "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." * * *
>
> [2.] [T]he question of arbitrability — whether [an agreement] creates a duty for the parties to arbitrate a particular grievance — is undeniably an issue for judicial determination. * * *
>
> [3.] [A] court is not to rule on the potential merits of the underlying claims. * * *
>
> [4.] [W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

*AT&T Technologies*, 475 U.S. 643, 648-650, 106 S.Ct. 1415, 89 L.Ed.2d 648, quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

{¶ 9} This court reviews a trial court's decision to grant a motion to stay litigation pending arbitration for an abuse of discretion. *McCaskey v. Sanford-Brown College*, 8th Dist. Cuyahoga No. 97261, 2012-Ohio-1543, ¶ 7. However, when we review the scope of an arbitration agreement and, specifically, whether a party has agreed to submit a specific issue to arbitration this court employs a de novo

standard of review. *Seyfried v. O'Brien*, 2017-Ohio-286, 81 N.E.3d 961, ¶ 18 (8th Dist.). In determining whether a party has agreed to arbitrate, we apply ordinary principles of contract formation. *Seyfried* at ¶ 18; *see also Palumbo v. Select Mgt. Holdings, Inc.*, 8th Dist. Cuyahoga No. 82900, 2003-Ohio-6045, ¶ 18 ("The question whether the parties agreed to arbitrate their dispute is * * * a matter of contract. The terms of a contract are a question of fact.").

{¶ 10} Because the AI and the AFA arbitration clauses apply to any dispute that "arises out of" or "in connection with" the respective operating agreement, they are both broad arbitration clauses. *See Alexander v. Wells Fargo Fin. Ohio 1, Inc.*, 122 Ohio St.3d 341, 2009-Ohio-2962, 911 N.E.2d 286, ¶ 13, quoting *Academy of Medicine v. Aetna Health, Inc.*, 108 Ohio St.3d 185, 2006-Ohio-657, 842 N.E.2d 488, ¶ 14 ("[T]he phrase '*any* claim or controversy *arising out of* the agreement' is the paradigm of a broad clause.") (emphasis added); *compare McManus v. Eicher*, 2d Dist. Greene No. 2003-CA-30, 2003-Ohio-6669, ¶ 13 ("Unlike a broad agreement to arbitrate all disputes arising out of or related to a contract, [an] arbitration clause [that applies only to disputes that 'arise *relative to the interpretation* of this Agreement'] is narrow because it is limited to the issue of contract interpretation."). (Emphasis added.) Based on the presence of broad arbitration clauses in the AI and AFA operating agreements, we will enforce the agreement unless we find "positive assurances" that the clauses cannot be interpreted to "cover[] the asserted dispute." *Alexander* at ¶ 13.

{¶ 11} The Ohio Supreme Court has held that a court may determine whether a cause of action falls within the scope of an arbitration agreement by considering "whether an action [can] be maintained without reference to the contract or relationship at issue." *Aetna Health* at ¶ 30 (adopting and applying test outlined in *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386 (6th Cir.2003)). If the action can exist separately and distinctly, it is likely beyond the scope of the arbitration agreement. *Natale v. Frantz Ward, L.L.P.*, 2018-Ohio-1412, 110 N.E.3d 829, ¶ 10 (8th Dist.); *see Myers v. Marks*, 3d Dist. Henry No. 7-10-13, 2013-Ohio-3523, ¶ 33 ("[D]etermination of whether [defendant] has membership rights in [the company] is arguably a determination that cannot be made without reference to the Agreement.").

{¶ 12} In determining whether Avery's claims can be maintained without reference to the operating agreements, we are mindful that our inquiry is not limited solely to Avery's claims as asserted in the complaint, but rather extends to consideration of the underlying factual allegations in the case. *See Arnold v. Burger King*, 2015-Ohio-4485, 48 N.E.3d 69, ¶ 62 (8th Dist.); *see also Fries v. Greg G. Wright & Sons, L.L.C.*, 2018-Ohio-3785, 120 N.E.3d 426, ¶ 40 (1st Dist.) ("When making this determination, we are not limited to the form in which the causes of action have been pled."); *see also Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1220 (11th Cir.2011), fn. 13 ("In analyzing the scope of an arbitration clause, we consider how the factual allegations in the complaint match up with the causes of action asserted and measure that against the language of the arbitration clause.").

**Avery's Claims**

{¶ 13} Avery argues that his claims do not arise from the operating agreement and instead arise from the "poor financial state of the companies" based on his assertions that the companies are insolvent and unable to meet their financial obligations. Avery argues that his judicial dissolution claims are outside the scope of the agreements because he claims that, under R.C. 1705.47, only a court is competent to hear a judicial dissolution action. Finally, Avery argues that the operating agreements specifically exclude judicial dissolution from arbitration based on language in the agreements that, in addition to providing for dissolution based on the members' vote, also permit dissolution "on the occurrence of events specified in [R.C. Chapter 1705]." He asserts that judicial dissolution pursuant to R.C. 1705.47 "is one of those events," and thus not a "dispute" as contemplated by the arbitration clauses.

{¶ 14} In *Natale*, 2018-Ohio-1412, 110 N.E.3d 829, at ¶ 15, this court upheld a stay in proceedings pending arbitration where the plaintiff's claims "touch[ed] matters contained in the agreement." In that case, the plaintiff alleged that his claim for intentional infliction of emotional distress was not within the scope of a partnership agreement because the underlying basis of the claim involved the defendants' conduct and not any right or entitlement under the contract. *Id.* at ¶ 11. The panel disagreed with the plaintiff, recognizing that regardless of how he framed the issue in his complaint, the underlying injury could have only existed because of the contract between the parties:

> [Plaintiff's] claims are directly related to his partnership relationship with the defendants. Although his complaint does not seek a determination of his entitlement to disability benefits under the partnership agreement, it describes a dispute that arises directly from his claim of entitlement to those benefits, as set forth in the partnership agreement.

*Id.* at ¶ 15.

{¶ 15} Similarly, in this case, Avery can maintain his claims only to the extent that Avery is a member of AI and AFA. Without a membership interest, Avery has no basis by which he can assert his claims. Membership in each company is inextricably linked to that company's operating agreement. The agreements form the basis by which membership exists. As previously stated, both agreements provide that "[t]he terms and conditions of this Agreement will govern the [members] within the limited liability company," and that "[t]his Agreement contains the entire agreement between the parties." Thus, the dispute between Avery and appellees regarding Avery's membership status in AI or AFA necessarily arises "out of" or "in connection with" the operating agreements. Under the agreements, whether Avery is a member of AI or AFA must be resolved according to the arbitration clause.

{¶ 16} The fact that Avery asserted a claim for judicial dissolution pursuant to R.C. 1705.47 does not change our analysis.

> Arbitration is not limited to claims alleging a breach of contract, and creative pleading of claims as something other than contractual cannot overcome a broad arbitration provision. The overarching issue is whether the parties agreed to arbitrate the issue. "There is no reason to depart from these guidelines where a party bound by an arbitration agreement raises claims founded on statutory rights."

*Aetna Health*, **108 Ohio St.3d 185**, **2006-Ohio-657**, **842 N.E.2d 488**, at ¶ 19, quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *see also Fazio*, **340 F.3d 386,** at 395 (Even tortious conduct can be subject to an arbitration agreement "if the allegations underlying the claims 'touch matters' covered by the agreement."). R.C. 1705.47 provides that "[o]n application a member of a limited liability company" may bring an action for judicial dissolution. It follows that if Avery is not a member of AI or AFA he is not entitled to seek judicial dissolution of that company under the statute. Regardless of whether R.C. 1705.47 vests the ultimate authority to declare AI or AFA judicially dissolved with "the tribunal," the preliminary determination of whether Avery is a member of either company is within the scope of the arbitration agreement and thus is an issue the parties agreed to arbitrate. *See Aetna Health* at ¶ 19-20.

{¶ 17} For this reason we also reject Avery's argument that provisions in both operating agreements permitting dissolution "on the occurrence of events specified in [R.C. Chapter 1705]" circumvent the arbitration clauses. The extent to which the operating agreements implicitly allow a member to seek judicial dissolution pursuant to a statute has no bearing on, or relationship to, the prerequisite determination that the person seeking the dissolution is a member in the first place.

**{¶ 18}** Simply put, Avery's claims cannot be maintained without reference to the operating agreements. *See Aetna Health* at ¶ 30. Accordingly, we find that the trial court did not err by staying the action pursuant to the terms of the AI and AFA arbitration clauses. We overrule Avery's assignment of error.

**{¶ 19}** Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

PATRICIA ANN BLACKMON, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR